STATE OF CONNECTICUT *v.* MICHAEL OUELLETTE
(SC 16694)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued January 6—officially released November 16, 2004

*Adele V. Patterson*, assistant public defender, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, was *Scott J. Murphy*, state's attorney, for the appellee (state).

*Opinion*

PALMER, J. The defendant, Michael Ouellette, was charged with murder in violation of General Statutes § 53a-54a[1] and elected to be tried by a three judge court in accordance with General Statutes § 54-82 (b).[2] Following a trial, the trial court, *Leuba, Wollenberg* and *Wiese, Js.*, rejected the defendant's affirmative defense of mental disease or defect; see General Statutes § 53a-13;[3] and his alternative affirmative defense of extreme emotional disturbance; see General Statutes § 53a-54a

---

[1] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a) of this section, on the question of whether the defendant acted with intent to cause the death of another person. . . ."

[2] General Statutes § 54-82 (b) provides: "If the accused is charged with a crime punishable by death or imprisonment for life and elects to be tried by the court, the court shall be composed of three judges to be designated by the Chief Court Administrator, or his designee, who shall name one such judge to preside over the trial. Such judges, or a majority of them, shall have power to decide all questions of law and fact arising upon the trial and render judgment accordingly."

[3] General Statutes § 53a-13 provides in relevant part: "(a) In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law. . . ."

(a);[4] and found him guilty of murder.[5] On appeal, the defendant claims that: (1) the trial court failed to ensure that his waiver of his right to a jury trial was knowing, voluntary and intelligent as required by the federal and state constitutions; (2) his waiver of a probable cause hearing was constitutionally infirm because the trial court had failed to canvass him adequately with respect to that waiver; (3) his constitutional right to due process was violated by virtue of the trial court's failure to canvass him in connection with his plea of not guilty by reason of mental disease or defect to ensure that his plea was knowing, voluntary and intelligent; and (4) the trial court improperly denied his motion for a presentence psychiatric examination under General Statutes § 17a-566.[6] We reject these claims and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's claims. On the

---

[4] See footnote 1 of this opinion.

[5] The trial court rendered judgment sentencing the defendant to a term of sixty years imprisonment.

[6] General Statutes § 17a-566 provides in relevant part: "(a) Except as provided in section 17a-574 any court prior to sentencing a person convicted of an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers . . . may if it appears to the court that such person has psychiatric disabilities and is dangerous to himself or others, upon its own motion or upon request of any of the persons enumerated in subsection (b) of this section and a subsequent finding that such request is justified, order the commissioner [of mental health and addiction services] to conduct an examination of the convicted defendant by qualified personnel of the [Whiting Forensic Division]. Upon completion of such examination the examiner shall report in writing to the court. Such report shall indicate whether the convicted defendant should be committed to the diagnostic unit of the division for additional examination or should be sentenced in accordance with the conviction. . . .

"(b) The request for such examination may be made by the state's attorney or assistant state's attorney who prosecuted the defendant for an offense specified in this section, or by the defendant or his attorney in his behalf. If the court orders such examination, a copy of the examination order shall be served upon the defendant to be examined.

"(c) Upon completion of the physical and psychiatric examination of the defendant, but not later than sixty days after admission to the diagnostic unit, a written report of the results thereof shall be filed in quadruplicate

evening of June 24, 1999, the defendant, a diagnosed paranoid schizophrenic, brutally bludgeoned to death Robert Lysz, a Roman Catholic priest, inside St. Matthew's Church in Bristol. The defendant was discovered the next morning hiding in the church rectory, wearing the victim's pants and in possession of the victim's wallet, credit card, and driver's license. Initially, the defendant told the police that he had killed the victim in self-defense, but subsequently raised the affirmative defense of mental disease or defect and the alternative affirmative defense of extreme emotional disturbance.

After the defendant's arrest, defense counsel moved, pursuant to General Statutes § 54-56d,[7] for an evaluation

with the clerk of the court before which he was convicted, and such clerk shall cause copies to be delivered to the state's attorney, to counsel for the defendant and to the Court Support Services Division.

"(d) Such report shall include the following: (1) A description of the nature of the examination; (2) a diagnosis of the mental condition of the defendant; (3) an opinion as to whether the diagnosis and prognosis demonstrate clearly that the defendant is actually dangerous to himself or others and requires custody, care and treatment at the division; and (4) a recommendation as to whether the defendant should be sentenced in accordance with the conviction, sentenced in accordance with the conviction and confined in the institute for custody, care and treatment, placed on probation by the court or placed on probation by the court with the requirement, as a condition to probation, that he receive outpatient psychiatric treatment."

Although subsection (c) of § 17a-566 was amended in 2002; see Public Acts 2002, 02-132, § 2; that amendment has no bearing on the merits of this appeal. We therefore refer to the current version of § 17a-566 throughout this opinion.

[7] General Statutes § 54-56d provides in relevant part: "(a) Competency required. Definition. A defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense.

"(b) Presumption of competency. A defendant is presumed to be competent. The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and conduct its own inquiry.

"(c) Request for examination. If at any time during a criminal proceeding it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency.

of the defendant to determine whether he was competent to stand trial. The trial court granted the motion and, on July 15, 1999, the defendant was examined by a team of mental health professionals from the department of mental health and addiction services (department). Following their examination of the defendant, the members of the evaluation team unanimously concluded that, due to psychiatric impairment, the defendant did not have the capacity either to understand the charges against him or to assist in his own defense but that, with appropriate treatment, there was a substantial probability that the defendant could be restored to competency. The trial court thereafter found that the defendant was not competent to stand trial and remanded him to the custody of the department for treatment designed to restore him to competency.

Over the next nine months, the defendant was evaluated for competency on three separate occasions. On the first two occasions, the members of the evaluation team concluded that, although the defendant was making progress toward competency, he had not yet been restored to competency. On April 20, 2000, however, after a third examination of the defendant, the evaluation team unanimously concluded that he was competent to stand trial. Thereafter, on the basis of the evaluation team's report and without objection from either party, the trial court found the defendant competent to stand trial.[8]

"(d) Examination of defendant. Report. If the court finds that the request for an examination is justified and that, in accordance with procedures established by the judges of the Superior Court, there is probable cause to believe that the defendant has committed the crime for which he is charged, the court shall order an examination of the defendant as to his competency. . . .

"(e) Hearing. The court shall hold a hearing as to the competency of the defendant no later than ten days after it receives the written report. Any evidence regarding the defendant's competency, including the written report, may be introduced at the hearing by either the defendant or the state. . . ."

[8] A competency hearing was scheduled for May 1, 2000. At the hearing, however, the parties agreed, in light of the conclusion of the evaluation

At trial, the defendant did not dispute that he had killed the victim but asserted that, due to his mental illness, he had been incapable of appreciating the wrongfulness of his conduct. Alternatively, the defendant claimed that he had killed the victim while under the influence of extreme emotional disturbance. The trial court found that the state had established beyond a reasonable doubt that the defendant had killed the victim with the intent to do so by repeatedly striking the victim on the head with a heavy, four foot long, brass candlestick holder. The trial court also found that, although "at various times over the years the defendant has displayed . . . the symptoms of mental illness," the defendant nevertheless had failed to establish either of his affirmative defenses,[9] which, the court further

team, that the defendant was competent to stand trial. Accordingly, the trial court did not conduct a formal evidentiary hearing regarding the defendant's competency to stand trial but, rather, made a finding of competency on the basis of the report of the evaluation team and the following colloquy between the court and the defendant:

"The Court: Mr. Ouellette, you understand that today's matter was to be a hearing on your competency to stand trial, that is, a determination as to whether or not you understood the nature of the proceedings that we were concerned with and whether you were capable of assisting your counsel . . . in your own defense. We were going to have a hearing to reach a determination as to those two questions. In that connection, I have the report from Whiting Forensic [Institute], which report demonstrates conclusions to the effect that you are competent to stand trial, that you do understand the nature of the proceedings, and that you are capable of assisting counsel in your own defense. And it is represented by counsel, both the state's attorney and your own counsel . . . that, based on the report and what's contained therein, the conclusions and evaluation, that a hearing on those issues is not necessary, that there will be an agreement that, based on the report and its contents, the court can make a finding of your competency. Do you understand all that [has been] said?

"The Defendant: Yes.

"The Court: And do you have any objection to what is requested that I do to make a finding on the basis of the contents of the report?

"The Defendant: No."

[9] In support of its rejection of the defendant's affirmative defenses, the trial court found, inter alia, that the defendant had "visited the rectory [on] the day of [the] murder . . . asked for the victim by name, [and] was alone with the victim in the rectory office for a short time in the afternoon." The

concluded, had been contrived by the defendant, after the murder, in an attempt to shirk responsibility for the crime.[10] Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the trial court failed to ensure that the defendant's waiver of his right to a jury trial was knowing, voluntary and intelligent as required by the federal and state constitutions. The defendant's claim is twofold. First, he contends that his right to a jury trial guaranteed under the sixth amendment to the United States constitution[11] was violated

defendant left the church but returned to the rectory later that afternoon, only to be turned away by the victim. That evening, however, the defendant again returned to the church and followed the victim inside. Once inside, the defendant confronted the victim and beat him to death with a candlestick holder. The defendant then: "moved and covered the [victim's] body in an attempt to [conceal] the crime and delay discovery"; "placed a screwdriver in the victim's hand after [the victim] was dead and [after the victim's body had been] moved" in what was "the beginning of [the defendant's] contrived [claim] of self-defense"; "washed his hands in a back room, [hid] his bloody pants and put on the victim's pants"; "took the victim's wallet, credit card and driver's license"; "[left] the church and attempted to conceal his identity by wearing a hooded robe and the victim's eyeglass frame in the morning following the murder"; gave a false name "[w]hen confronted by the [church] staff in the rectory at about 7 a.m. [on the day after the murder]"; and "again gave false identification" when the police arrived. The trial court further found that, at the time of his arrest, the defendant "appeared calm, docile and coherent . . . and was not irrational, confused or delusional." Finally, the court noted that the defendant "had a history of violent, disruptive and assaultive behavior . . . ."

[10] The trial court characterized the defendant's claim of mental impairment as predicated on hallucinations and the defendant's purported belief that certain people had been conspiring against him. The court expressly found, however, that the defendant's "theory of conspiracy . . . and hallucinations did not develop until a considerable time [after the murder]."

[11] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ."

The sixth amendment right to a jury trial is made applicable to the states through the due process clause of the fourteenth amendment. See *Duncan* v. *Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968).

by virtue of the trial court's failure to canvass him adequately, in light of his history of mental illness, regarding his waiver of a trial by jury. Second, the defendant contends that his rights under article first, § 19, of the Connecticut constitution, as amended by article four of the amendments,[12] were violated because the court did not inform him of certain rights to which he was entitled under the state constitution.[13] We reject both of these contentions.[14]

The following additional facts and procedural history are relevant to our resolution of the defendant's claims. On August 1, 2001, the defendant, through counsel, informed the court that he wished to forgo his right to

[12] Article first, § 19, of the Connecticut constitution, as amended by article four of the amendments, provides: "The right of trial by jury shall remain inviolate, the number of such jurors, which shall not be less than six, to be established by law; but no person shall, for a capital offense, be tried by a jury of less than twelve jurors without his consent. In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate."

[13] Article first, § 19, of the Connecticut constitution, as amended by article four of the amendments, provides an accused with certain rights above and beyond those guaranteed by the federal constitution, including the right to challenge jurors peremptorily and the right to have counsel question each prospective juror individually. See footnote 12 of this opinion.

[14] The defendant failed to object to the canvass in the trial court and, therefore, seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), in which this court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id., 239–40. Although the defendant is entitled to review of his claim because he has satisfied the first two prongs of *Golding*, he nevertheless cannot prevail on his claim because, for reasons set forth more fully hereinafter, he has failed to satisfy the third prong of *Golding*.

a jury trial and be tried by a three judge court. At that time, the following colloquy ensued:

"The Court: Good afternoon, Mr. Ouellette.

"The Defendant: Good afternoon, Your Honor.

"[State's Attorney]: The record should indicate we did have discussions in chambers.

"The Court: Yes, we did.

"[State's Attorney]:—this morning. And, it's my understanding [that] the defendant wishes to change his election as to the trier of fact.

"[Defense Counsel]: That's correct, Your Honor.

"[State's Attorney]: And, I believe he's prepared for the canvass on that matter.

"The Court: Please proceed.

"[Defense Counsel]: Yes, Your Honor. [The defendant] wishes to be tried by a three judge panel.

"The Court: Mr. Ouellette, [do] you understand you have a right to be tried by a jury?

"The Defendant: Yes, sir.

"The Court: You have chosen a three judge panel?

"The Defendant: Yes, sir.

"The Court: And, was that with the advice of your client—I mean your attorney has advised you in regard to these matters?

"The Defendant: Yes, sir.

"The Court: And are you satisfied with his advice?

"The Defendant: Yes, sir.

"The Court: Very well."

The six day trial commenced on October 23, 2001. Before the presentation of evidence, the state renewed its motion to consolidate certain other charges with the murder charge.[15] Defense counsel objected, claiming that, according to his recollection of the hearing on August 1, 2001, the defendant had waived his right to a jury trial only as to the murder charge. The parties agreed to proceed with the trial and to have the court defer a ruling on the motion to consolidate until the transcript of the August 1, 2001 hearing could be obtained for review by the trial court. The state then proceeded with its first witness.

Immediately after the lunch recess, the trial court denied the state's motion to consolidate the charges, stating that it had reviewed the transcript of the hearing at which the defendant had waived his right to a jury trial and that the transcript indicated that the defendant had waived his right to a jury trial only as to the murder charge. Immediately thereafter, the trial court made the following inquiry of the defendant regarding his decision to forgo his right to a jury trial on the murder charge:

"[State's Attorney]: . . . And just so the record is clear, Your Honor, my understanding is . . . that the defendant continues in his waiver of a jury trial as to the murder case. There's no question that that was his intention at the time that he made his waiver.

"[Defense Counsel]: If that's a question posed to counsel, that's correct. Yes, that's our position.

"[The Court]: All right. And you understand what we're doing here, Mr. Ouellette?

"[The Defendant]: Yes, sir.

---

[15] The defendant also was charged separately with burglary and theft of a credit card. Those charges, however, are not the subject of this appeal.

"[The Court]: And there's no question that you prefer to be tried by three judges and have the judges make the decision rather than a jury?

"[The Defendant]: Yes, sir.

"[The Court]: You know you had a right to a jury before you waived it?

"[The Defendant]: Yes, sir.

"[The Court]: And you're going to continue with your waiver?

"[The Defendant]: Yes, sir.

"[The Court]: All right. And that's on the basis of the advice of counsel?

"[The Defendant]: Yes, sir.

"[The Court]: Are you satisfied with your lawyer's advice with regard to that?

"[The Defendant]: Yes, sir."[16]

Before addressing the merits of the defendant's claims, we set forth the applicable standard of review. "The right to a jury trial in a criminal case is among

---

[16] The defendant asserts that the court's second canvass, on October 23, 2001, bears no relevance to our determination of whether the defendant's waiver of his right to a jury trial was knowing, voluntary and intelligent because that second canvass occurred after the trial already had commenced. We disagree. The second canvass, which makes reference to the first canvass, is relevant to the extent that it informs our understanding of what the parties themselves understood with respect to the import of the first canvass. Moreover, under General Statutes § 54-82b (b), "if a judge acting on motion made by the accused within ten days after judgment finds that [the] waiver [of the right to a jury trial] was made when the accused was not fully cognizant of his rights or when, *in the opinion of the judge, the proper administration of justice requires it,* the judge shall vacate the judgment and cause the proceeding to be set for jury trial." (Emphasis added.) Thus, although the second canvass occurred after the defendant's trial had commenced, it occurred at a time when the court still could have acted to remedy any waiver that was invalid.

those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be knowing and intelligent, as well as voluntary. *Schneckloth* v. *Bustamonte*, [412 U.S. 218, 237, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)] . . . . Relying on the standard articulated in *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), we have adopted the definition of a valid waiver of a constitutional right as the intentional relinquishment or abandonment of a known right. . . . This strict standard precludes a court from presuming a waiver of the right to a trial by jury from a silent record. . . . [S]ee *Boykin* v. *Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case. . . . [S]ee *Adams* v. *United States ex rel. McCann*, 317 U.S. 269, 278, 63 S. Ct. 236, 87 L. Ed. 268 (1942). When such a claim is first raised on appeal, our focus is on compliance with these constitutional requirements rather than on observance of analogous procedural rules prescribed by statute or by the Practice Book." (Citations omitted; internal quotation marks omitted.) *State* v. *Cobb*, 251 Conn. 285, 371–72, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000).

## A

The defendant first claims that the trial court's canvass failed to satisfy federal constitutional requirements because of the defendant's known history of mental illness. In essence, the defendant claims that the trial court was obligated to conduct a more thorough canvass than otherwise would have been required because the court was aware of the defendant's history of mental illness. We disagree.

It is undisputed that an accused who is competent to stand trial also is competent to waive constitutional

rights.[17] See, e.g., *Godinez* v. *Moran*, 509 U.S. 389, 398–99, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993). Thus, "any criminal defendant who has been found competent to stand trial, ipso facto, is competent to waive the right to [a jury trial] as a matter of federal constitutional law." *State* v. *Day*, 233 Conn. 813, 824, 661 A.2d 539 (1995). Because the defendant was found competent to stand trial, and because that determination has not been challenged on appeal, the defendant also was competent to waive his right to a jury trial.

The determination of whether a defendant is competent to waive his right to a jury trial, however, is only the first of two steps necessary to determine whether the relinquishment of that right is constitutionally valid. "In addition to determining that a defendant who seeks to [waive a constitutional right] is competent, a trial court must satisfy itself that the waiver . . . is knowing and voluntary." *Godinez* v. *Moran*, supra, 509 U.S. 400. "[I]n this sense, there is a 'heightened' standard for [the waiver of a constitutional right], but it is not a heightened standard of competence." Id., 400–401. Moreover, it is the same standard that is applicable to all criminal defendants who have been found competent to stand trial. Under this standard, "[t]he determination of whether there has been an intelligent waiver of [a constitutional right] must depend, in each case, upon

---

[17] As a matter of state law, "[t]he standard we use to determine whether a defendant is competent . . . to stand trial is that set forth in *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (test for competence to stand trial is whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him). The *Dusky* standard has been codified at [General Statutes] § 54-56d (a), which provides that [a] defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense." (Internal quotation marks omitted.) *State* v. *George B.*, 258 Conn. 779, 785–86, 785 A.2d 573 (2001); see footnote 7 of this opinion.

the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson* v. *Zerbst,* supra, 304 U.S. 464; see also *State* v. *Hafford,* 252 Conn. 274, 296, 746 A.2d 150 ("[i]n considering the validity of [a] waiver, we look . . . to the totality of the circumstances of the claimed waiver"), cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000).

In the present case, the trial court found that the defendant was competent to stand trial. Although it is true that the defendant required treatment to restore him to competency, at no time after the evaluation team rendered its conclusion that the defendant was competent did defense counsel, the state or the trial court express any concern whatsoever about the defendant's competence. Indeed, the defendant waived a formal competency hearing in light of the evaluation team's competency finding. Furthermore, the defendant was apprised of his right to a jury trial in plain and clear terms and he affirmatively waived that right. In fact, the defendant was canvassed twice in regard to that election and, on each such occasion, expressed his desire to be tried by a three judge court in lieu of a jury. The defendant also indicated that he was satisfied with the advice that he had received from defense counsel. The record therefore establishes that the defendant, having been informed of his right to a jury trial, freely and intelligently elected to be tried by a three judge court instead.[18]

---

[18] The defendant relies primarily on two cases, namely, *United States* v. *David,* 511 F.2d 355 (D.C. Cir. 1975), and *United States* v. *Christensen,* 18 F.3d 822 (9th Cir. 1994), to support his contention that the trial court failed to canvass him adequately regarding his waiver of the right to a jury trial in light of his history of mental illness. Neither of these cases constitutes persuasive precedent for the defendant's claim.

In *David,* the record reflected a significant possibility that the defendant's waiver of his right to a jury trial was not knowing, voluntary and intelligent due to the defendant's mental condition at the time of the purported waiver; see *United States* v. *David,* supra, 511 F.2d 358–59; and, in fact, defense counsel expressed serious concerns about the defendant's competency at

## B

The defendant also claims that the trial court's canvass was inadequate for purposes of article first, § 19, of the state constitution, as amended by article four of the amendments,[19] because he was not apprised of certain rights provided under that provision that are not afforded under the federal constitution. See footnote 13 of this opinion. We disagree.

In *State* v. *Marino*, 190 Conn. 639, 645–46, 462 A.2d 1021 (1983), this court considered, and rejected, a claim that, because article first, § 19, of the state constitution provides rights above and beyond those afforded under the federal constitution, a waiver of that state constitutional right to a jury trial, to be valid, must reflect that the accused knowingly and voluntarily waived those additional rights.[20] In rejecting this claim, we stated:

that time. Id., 358. Moreover, the District of Columbia Circuit Court of Appeals ultimately determined that the canvass in that case was inadequate not because of the defendant's mental condition but, rather, because his responses to the trial court's canvass were equivocal, at best. Id., 361–62.

*Christensen* also is distinguishable from the present case. In *Christensen*, the defendant sought and received several continuances of his trial because his counsel had expressed concern that he was not competent to stand trial. *United States* v. *Christensen*, supra, 18 F.3d 823 and n.2. No competency hearing ever was held, however, and, after the conclusion of the trial, a psychiatrist testified at the sentencing hearing that the defendant suffered from a mental illness that "could result in uncontrollable mood swings during which a person might not be able to appreciate the wrongfulness of his or her own behavior." Id., 824. The trial court in *Christensen*, therefore, in contrast to the trial court in the present case, did not have the benefit of a recent and comprehensive evaluation of the defendant's mental condition at the time of the jury trial waiver. Thus, although we agree with the Ninth Circuit Court of Appeals in *Christensen* that a more extensive colloquy generally will be required of a mentally ill defendant who seeks to waive his right to a jury trial; see id., 825–26; there is nothing in the record of the present case to suggest that the trial court's canvass of the defendant was inadequate because of his history of mental illness.

[19] See footnote 12 of this opinion.

[20] The canvass in *Marino* consisted of the following relevant colloquy:

"The Clerk: . . . [T]o th[e] charge [of murder] what is your plea, guilty or not guilty?

"The Accused: Not guilty.

"Both General Statutes § 54-82b (b) and [what is now] Practice Book § [42-1][21] require that the judge advise the defendant at the time he pleads of his right to a trial by jury. We have indicated that a literal compliance with these provisions is not essential if the record affirmatively discloses that the defendant intelligently and knowingly did waive his right to trial by jury. *State v. Shockley*, 188 Conn. 697, 711, 453 A.2d 441 (1982). Neither the statute nor the rule specifies the precise content of the advice to be given a defendant who seeks a non-jury trial. The colloquy with the court . . . does establish that, with counsel present, [Joseph Marino, the] defendant voluntarily chose to be tried by a three judge court rather than a jury. The federal standard for jury waiver set forth in [rule 23 (a) of the Federal Rules of Civil Procedure], which has frequently been held constitutionally adequate, accomplishes nothing more by way of assurance of a knowing and intelligent waiver on the part of a defendant. It is not unreasonable to infer such a waiver from the free expression by a defendant of his election of a non-jury trial especially whe[n] he is represented by counsel. See *Adams* v. *United States ex*

---

"The Clerk: Do you elect a trial by court or by jury?
"[Defense Counsel]: By a three judge court, [Y]our Honor.

    &ast; &ast; &ast;

"The Court: You are seeking a trial by a three judge court. I presume . . . that you do understand that this means that your trial will be had before a court and not before a jury and that that court will consist of three judges; do you so understand?
"[The Accused]: Yes, sir.
"The Court: And, is this your free and voluntary choice?
"[The Accused]: Yes, sir. ·
"The Court: Record may so reflect." (Internal quotation marks omitted.) *State* v. *Marino*, supra, 190 Conn. 641–42 n.1.

[21] Practice Book § 42-1 provides: "The defendant in a criminal action may demand a trial by jury of issues which are triable of right by jury. If at the time the defendant is put to plea, he or she elects a trial by the court, the judicial authority shall advise the defendant of his or her right to a trial by jury and that a failure to elect a jury trial at that time may constitute a waiver of that right. If the defendant does not then elect a jury trial, the defendant's right thereto may be deemed to have been waived."

*rel. McCann,* [supra, 317 U.S. 269] (an accused, without counsel by his own election, may voluntarily waive right to jury if capable of determining his own best interest). We, therefore, find no violation of the defendant's federal constitutional right to a jury trial. *We also see no reason to demand as a constitutional necessity a more elaborate procedure for an effective waiver of the right of jury trial as guaranteed by our state constitution.* Conn. Const., art. I, § 19." (Emphasis added; internal quotation marks omitted.) *State* v. *Marino,* supra, 645–46.

The defendant nevertheless asks us to reconsider our state constitutional holding in *Marino.* He contends that reconsideration is appropriate because *Marino* was decided prior to *State* v. *Geisler,* 222 Conn. 672, 685, 610 A.2d 1225 (1992), in which we identified with specificity, for the first time, the analytical tools to be used in construing the contours of our state constitution.[22]

It is true, of course, that *Marino* predated *Geisler,* and it also is true that we did not undertake a lengthy analysis of the state constitutional claim in *Marino.* See generally *State* v. *Marino,* supra, 190 Conn. 645–46. The defendant, however, has provided no persuasive federal or sister state precedent to support his contention that our conclusion in *Marino* was incorrect. In the absence of any substantial reason to revisit our holding in *Marino,* we decline to do so.[23]

---

[22] In *Geisler,* we stated that, "[i]n order to construe the contours of our state constitution and reach reasoned and principled results, the following tools of analysis should be considered to the extent applicable: (1) the textual approach . . . (2) holdings and dicta of this court, and the Appellate Court . . . (3) federal precedent . . . (4) sister state decisions . . . (5) the historical approach, including the historical constitutional setting and the debates of the framers . . . and (6) economic/sociological considerations." (Citations omitted.) *State* v. *Geisler,* supra, 222 Conn. 684–85.

[23] In *Marino,* however, we emphasized "the limited nature of our holding"; *State* v. *Marino,* supra, 190 Conn. 646; stating that, "[u]ndoubtedly a more comprehensive colloquy than th[e] record discloses is generally desirable

We therefore conclude that the record is sufficient to establish that the defendant's waiver of his right to a jury trial was knowing, voluntary and intelligent. "First, there is no evidence to suggest that the defendant was not of ordinary intelligence or educational background." (Internal quotation marks omitted.) *State* v. *Cobb*, supra, 251 Conn. 372. The defendant, moreover, was represented by counsel, he was advised of his right to a jury trial in open court on two separate occasions and, on each of those occasions, he responded affirmatively when asked by the court whether he understood that he was giving up his right to a trial by jury. Finally, "[w]e cannot assume that in performing his duty of competent representation [defense] counsel did not advise the defendant of the consequences of his choice, even to the extent of the refinements the defendant now demands." *State* v. *Marino*, supra, 190 Conn. 646. In addition, we will not assume that the defendant did not fully discuss the decision to forgo a jury trial with defense counsel. Under the circumstances, the defendant cannot prevail on his claim that his waiver of his right to a jury trial was constitutionally deficient.

## II

The defendant next claims that his waiver of the probable cause hearing was constitutionally infirm

whe[n] a defendant elects trial without a jury. . . . Our concern . . . however, is only with the adequacy of the record to show a waiver of a jury trial when its effectiveness is first questioned on appeal without the benefit of a factual exploration of that issue at some evidentiary proceeding. There is nothing before us to indicate that the defendant was not of ordinary intelligence and educational background and that the choice of court or jury was not fully discussed with him by his counsel. We cannot assume that in performing his duty of competent representation [defense] counsel did not advise the defendant of the consequences of his choice, even to the extent of the refinements the defendant now demands. . . . [T]he record . . . satisfies the constitutional requirement for an affirmative disclosure of an effective jury waiver which may be relied upon in the absence of some contrary indication." (Citation omitted.) Id. We reaffirm the foregoing observations in all respects.

because the trial court, *Gaffney, J.*, failed to canvass the defendant adequately in regard to that waiver. The defendant's claim is predicated on two purported deficiencies with that canvass. First, the defendant contends that the trial court's explanation of the nature of a probable cause hearing was inadequate. Second, the defendant contends that the canvass occurred so soon after the defendant was found competent to stand trial that the defendant's waiver of the probable cause hearing was not valid. We reject the defendant's claim that the canvass was constitutionally deficient.[24]

The following additional facts and procedural history are relevant to our analysis of the defendant's claim. Immediately after the defendant was found competent to stand trial, the state's attorney informed the court that the defendant wished to waive his right to a probable cause hearing. Thereafter, the following colloquy between the court and the parties ensued:

"[State's Attorney]: The next issue . . . would be normally a probable cause hearing. It's my understanding from talking to [defense counsel] that he and his client have decided, after discussing this matter, that they wish to waive [the] probable cause hearing.

"[Defense Counsel]: That's accurate.

"The Court: All right. Mr. Ouellette, do you understand what was just said?

"The Defendant: Yes.

"The Court: You have a right to a probable cause hearing, and the burden in connection with that hearing

---

[24] The defendant seeks to prevail on his claim under *Golding*; see footnote 14 of this opinion; because he failed to raise a timely objection to the canvass in the trial court. Although the defendant is entitled to review of his constitutional claim because the record is adequate for such review, he cannot prevail on his claim because he has failed to establish that the canvass was inadequate.

is upon the state, or it would have been. The state has the burden of proving that there was probable cause, based on the underlying facts, to arrest you and charge you with the offense with which you stand charged, and the state would put on evidence to support that claim. You would not have to put on any evidence of your own. You have the right to simply sit by with your counsel and listen to what is presented by the state. . . . It's my understanding, based on what was just represented by [defense counsel] and confirmed, I guess, by the state's attorney, that you don't wish to contest or to require the probable cause hearing to go forward?

"The Defendant: No.

"The Court: All right. So that you're waiving that right which you have?

"The Defendant: Yes.

"The Court: And that there's no question that you're doing it understandingly and knowingly of your rights as I've explained them to you?

"The Defendant: Yes."

Article first, § 8, of the state constitution, as amended by article seventeen of the amendments, provides in relevant part: "No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law . . . ." The procedures governing probable cause hearings are set forth in General Statutes § 54-46a,[25] which provides in

[25] General Statutes § 54-46a provides in relevant part: "(a) No person charged by the state, who has not been indicted by a grand jury prior to May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause.

relevant part that a defendant "may knowingly and voluntarily waive" his right to a probable cause hearing. General Statutes § 54-46a (a).

We conclude, contrary to the claim of the defendant, that his waiver of the probable cause hearing satisfied the requirements of § 54-46a (a) and was constitutionally valid. After informing the defendant of his right to a probable cause hearing, the trial court explained that, at any such hearing, the state would have the burden of establishing probable cause to believe that the defendant had committed the offense with which he was charged. The record further discloses that the defendant had discussed the matter with defense counsel and, when asked if he understood what he was waiving, the defendant personally affirmed that he did. We see no reason to disturb the trial court's finding that the defendant's waiver of his right to a probable cause hearing was knowing and voluntary.

The defendant contends, however, that the waiver was invalid because it occurred immediately after the trial court had found the defendant competent to stand trial. In support of this contention, the defendant asserts that the temporal proximity of the waiver to the finding of competency gives rise to a serious concern that the defendant did not have a meaningful opportunity to discuss the waiver issue with defense counsel prior to the canvass. Because the defendant was competent to stand trial, however, he also was competent to waive his rights. See part I A of this opinion. The timing of such a waiver is irrelevant as long as the defendant was

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in Superior Court. . . .

"(c) If, from the evidence presented . . . it appears to the court that there is probable cause to believe that the accused person has committed the offense charged, the court shall so find and approve the continuance of the accused person's prosecution for that offense. . . ."

competent when the waiver occurred, and there is no dispute that the defendant was competent to stand trial when he waived his right to a probable cause hearing. Moreover, there is nothing in the record to suggest that the defendant did not have ample time to discuss the waiver issue with counsel after he was restored to competency. Indeed, as we have indicated, the mental health professionals responsible for evaluating the defendant reported on April 20, 2000, that he was competent. Thus, the record belies the defendant's claim that the defendant's waiver of his right to a probable cause hearing was not knowing and voluntary.

## III

The defendant next claims that the trial court's failure to canvass him regarding his plea of not guilty by reason of mental disease or defect[26] violated his constitutional right to due process. In support of this contention, the defendant relies primarily on *Duperry* v. *Solnit*, 261 Conn. 309, 803 A.2d 287 (2002),[27] in which "we conclude[d], in the exercise of our supervisory authority over the administration of justice,[28] that in all future

---

[26] We note that the defendant technically did not enter a plea of not guilty by reason of mental disease or defect but, rather, entered a simple plea of not guilty and filed, independently of that plea, a notice of intent to rely on the affirmative defense of mental disease or defect. In such notice, the defendant represented that "he might rely on the defense of mental disease or defect and/or present expert testimony [at trial] concerning that defense and/or other condition bearing on the issue of lack of the appropriate mental state." For purposes of this appeal, we treat the defendant's notice of intent to rely on the affirmative defense of mental disease or defect and his subsequent assertion of that affirmative defense at trial as the equivalent of a plea of not guilty by reason of mental disease or defect.

[27] We note that we did not issue our opinion in *Duperry* until nearly seven months after the trial court had rendered judgment in the present case.

[28] "Appellate courts possess an inherent supervisory authority over the administration of justice. . . . Supervisory powers are exercised to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . Under our supervisory authority, we have adopted rules intended to guide the lower courts in the administration of justice in all aspects of the criminal

cases in which a defendant pleads not guilty by reason of mental disease or defect, and the state substantially agrees with the defendant's claim of mental disease or defect, with the result that the trial essentially is not an adversarial proceeding, the trial court must canvass the defendant to ensure that his plea is made voluntarily and with a full understanding of its consequences."[29] Id., 329. Neither the conclusion nor the rationale of *Duperry* supports the defendant's claim that the trial court's failure to canvass the defendant with respect to his plea of not guilty by reason of mental disease or defect implicated his right to due process.

Because the defendant relies heavily on *Duperry*, we commence our review of the defendant's claim with a discussion of that case. Adam Duperry was arrested and charged with arson and manufacturing bombs in connection with the explosion of a pipe bomb at the Institute of Living in Hartford. Id., 312–13. Thereafter, two psychiatrists who had examined Duperry at the request of his counsel concluded that, at the time of the offense, Duperry had been suffering from a severe mental illness and, as a consequence, had lacked the capacity to appreciate the wrongfulness of his actions and to conform his conduct to the law. Id., 313; see General Statutes § 53a-13 (a). In light of these evaluations, the state ultimately agreed not to oppose a plea of not guilty by reason of mental disease or defect, and Duperry, through counsel, agreed to waive a jury trial and not to contest the state's prima facie case regarding the underlying charges. *Duperry* v. *Solnit*, supra, 261 Conn. 313. Duperry subsequently pleaded not guilty by reason of mental disease or defect, elected to be tried

---

process." (Internal quotation marks omitted.) *State* v. *Higgins*, 265 Conn. 35, 61 n.26, 826 A.2d 1126 (2003).

[29] The defendant again seeks to prevail on his claim under *Golding*; see footnote 14 of this opinion; because he failed to raise that claim in the trial court.

by a court, and, in accordance with their agreement, the state and Duperry presented their respective cases without opposition. Id., 314. At the conclusion of the proceeding, the trial court found Duperry not guilty by reason of mental disease or defect and subsequently ordered that Duperry be committed to the custody of the psychiatric security review board; see General Statutes § 17a-582 (e) (1); and that he be confined in a hospital for psychiatric disabilities for a maximum term of twenty-five years. *Duperry* v. *Solnit*, supra, 314–15.

Duperry thereafter sought a writ of habeas corpus, alleging, inter alia, that his due process rights under the state and federal constitutions were violated by virtue of his plea of not guilty by reason of mental disease or defect because he was not apprised of and did not fully understand the consequences of his plea. See id., 315. In essence, Duperry claimed that, in light of the rights that he was waiving as a result of the interposition of his affirmative defense of mental disease or defect, and to ensure that he was giving up those rights knowingly and voluntarily, the trial court was required to canvass him in the same manner that it is required, under *Boykin* v. *Alabama*, supra, 395 U.S. 238,[30] to canvass an accused who pleads guilty. See *Duperry* v. *Solnit*, supra, 261 Conn. 316, 317–18. After a hearing, the habeas court concluded that the requirements for the acceptance of a guilty plea apply equally to the acceptance of a plea of not guilty by reason of mental disease or defect. Id., 315–16. Upon noting that there was nothing in the record to indicate that the trial court had canvassed Duperry in a manner analogous

---

[30] "In *Boykin* v. *Alabama*, supra, 395 U.S. 242–44, the United States Supreme Court held that because a defendant who pleads guilty necessarily waives three important constitutional rights, namely, the right against self-incrimination, the right to confront one's accusers, and the right to a jury trial, the due process clause of the fourteenth amendment requires that a guilty plea be knowing and voluntary." *Duperry* v. *Solnit*, supra, 261 Conn. 317–18 n.6.

to that required under Practice Book § 39-19,[31] which sets forth the procedure for canvassing a defendant who pleads guilty, the habeas court also concluded that Duperry's plea of not guilty by reason of mental disease or defect was involuntary because Duperry did not understand the consequences of that plea. Id., 316. The habeas court therefore rendered judgment granting the petition. Id.

The state appealed, and we reversed the judgment of the habeas court, concluding, inter alia, that that court improperly had established a new constitutional rule in a collateral proceeding in contravention of the principle announced in *Teague* v. *Lane*, 489 U.S. 288, 316, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).[32] *Duperry* v. *Solnit*, supra, 261 Conn. 326, 336. Specifically, we determined that, in light of *Teague*, Duperry could not

[31] Practice Book § 39-19 provides: "The judicial authority shall not accept the plea [of guilty or nolo contendere] without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

[32] In *Teague*, the United States Supreme Court held that, subject to certain exceptions that we determined were not applicable to the habeas claim raised in *Duperry; Duperry* v. *Solnit*, supra, 261 Conn. 324–26; new constitutional rulings should not be declared or applied in collateral proceedings. *Teague* v. *Lane*, supra, 489 U.S. 316. In the context of a claim such as that raised by Duperry for the first time in his habeas petition, a rule is considered "new" under *Teague* "unless the precedent existing at the time of the petitioner's trial compelled the result" that he sought in connection with his habeas petition. *Duperry* v. *Solnit*, supra, 319.

prevail on his habeas claim because, as of December, 1988, when Duperry entered his plea of not guilty by reason of mental disease or defect, applicable precedent did not compel the trial court to canvass Duperry in regard to that plea.[33] See id., 324; see also footnote 32 of this opinion. Having concluded that the principle enunciated in *Teague* barred the habeas court from establishing a new constitutional rule in Duperry's habeas proceeding, we expressly declined to "address whether the substance of the habeas court's holding was proper, i.e., whether the principle of *Boykin* v. *Alabama*, supra, 395 U.S. 242–44, that due process requires a plea of guilty to be knowing and voluntary, applies equally to a plea of not guilty by reason of

[33] In concluding that the habeas court had adopted a new constitutional rule in violation of *Teague*, we expressly rejected Duperry's contention that two federal appeals court cases, namely, *Miller* v. *Angliker*, 848 F.2d 1312 (2d Cir.), cert. denied, 488 U.S. 890, 109 S. Ct. 224, 102 L. Ed. 2d 214 (1988), and *United States* v. *Brown*, 428 F.2d 1100 (D.C. Cir. 1970), supported his claim that the habeas court had relied on established precedent in holding that the canvass required under *Boykin* v. *Alabama*, supra, 395 U.S. 238, for cases involving guilty pleas also was required in cases involving pleas of not guilty by reason of mental disease or defect. With respect to *Miller*, we noted that, although, in that case, the Second Circuit Court of Appeals had recognized the similarities between a guilty plea and a plea of not guilty by reason of mental disease or defect, the court's holding was limited to a determination that, in light of those similarities, the state is equally obligated, under *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), to disclose exculpatory information to defendants who plead guilty *and* to defendants who plead not guilty by reason of mental disease or defect. *Duperry* v. *Solnit*, supra, 261 Conn. 322, 323; see *Miller* v. *Angliker*, supra, 1320. With respect to *Brown*, we observed that, in that case, the District of Columbia Circuit Court of Appeals had extended the canvass requirement to a defendant who stipulates to all of the issues at trial except sanity. *Duperry* v. *Solnit*, supra, 323; see *United States* v. *Brown*, supra, 1103–1104. We noted, however, that the holding in *Brown* did not appear to rest on constitutional footing but, rather, upon the court's exercise of its supervisory authority. *Duperry* v. *Solnit*, supra, 324; see *United States* v. *Brown*, supra, 1102–1103. We therefore concluded that neither *Miller* nor *Brown* "established the principle that the trial court *must*, as a constitutional requirement, canvass a defendant who enters [a plea of not guilty by reason of mental disease or defect] to ensure that the plea is made knowingly and voluntarily." (Emphasis in original.) *Duperry* v. *Solnit*, supra, 323.

mental disease or defect." *Duperry* v. *Solnit*, supra, 326 n.7.

Notwithstanding our determination in *Duperry* regarding the habeas court's improper resolution of the constitutional issue, we nevertheless concluded that it was "appropriate, in light of concerns of fundamental fairness, to consider the substance of this issue pursuant to our supervisory authority for the purpose of providing guidance to trial courts in future cases." Id., 326–27. Upon such consideration, we adopted a rule requiring trial courts to canvass defendants who elect to plead not guilty by reason of mental disease or defect.[34] Id., 329. We limited the rule, however, in two respects, both of which are particularly important for purposes of this appeal. First, the rule is prospective in nature, and second, it applies to cases in which "the state substantially agrees with the defendant's claim of mental disease or defect, with the result that the trial essentially is not an adversarial proceeding . . . ."[35] Id.

[34] With respect to the parameters of the inquiry, we stated: "The scope of the canvass should be similar to that of the canvass prescribed by Practice Book § 39-19 for a defendant who pleads guilty. Specifically, the canvass must, at a minimum, establish that the defendant enters his plea with the knowledge that: (1) he is waiving his right to a jury trial; (2) he is waiving his right not to incriminate himself; (3) he is waiving his right to confront the witnesses against him; (4) he is exposing himself to the possibility of commitment to the jurisdiction of the board and of confinement in a hospital for psychiatric disabilities; (5) he must remain committed during any term of commitment imposed by the trial court unless the court finds that the defendant is a person who should no longer be committed and orders his discharge; (6) the maximum term of commitment ordered by the court can be equal to the maximum sentence that could have been imposed if the defendant were convicted of the offense, with a statement of that actual sentence; and (7) any term of commitment imposed by the trial court may be extended, potentially for an indefinite duration, as a result of a civil commitment proceeding pursuant to General Statutes § 17a-593." *Duperry* v. *Solnit*, supra, 261 Conn. 329.

[35] Because our opinion in *Duperry* was not released until after judgment had been rendered by the trial court in the present case; see footnote 27 of this opinion; *Duperry*, by its express terms, does not apply to this case. See *Duperry* v. *Solnit*, supra, 261 Conn. 329 (rule announced applies only in "future cases"). *Duperry* also is inapplicable because, in the present case,

As we observed in *Duperry*; id., 327; and as courts in a number of other jurisdictions also have recognized; e.g., *Miller* v. *Angliker*, 848 F.2d 1312, 1320 (2d Cir.), cert. denied, 488 U.S. 890, 109 S. Ct. 224, 102 L. Ed. 2d 214 (1988); *United States* v. *Brown*, 428 F.2d 1100, 1102–1103 (D.C. Cir. 1970); there are certain practical similarities between guilty pleas and pleas of not guilty by reason of mental disease or defect or by reason of insanity. We know of no court, however, that has required, as a matter of *constitutional law*, a *Boykin*-type canvass of a defendant who pleads not guilty by reason of mental disease or defect or by reason of insanity. Moreover, those courts that have required such a canvass have done so not as a matter of constitutional mandate but, rather, on the basis of prudential considerations; e.g., *United States* v. *Brown*, supra, 1103–1104; *State* v. *Shegrud*, 131 Wis. 2d 133, 138, 389 N.W.2d 7 (1986), cert. denied, 479 U.S. 1037, 107 S. Ct. 891, 93 L. Ed. 2d 843 (1987); see *People* v. *Vanley*, 41 Cal. App. 3d 846, 856, 116 Cal. Rptr. 446 (1974); *Legrand* v. *United States*, 570 A.2d 786, 792–94 (D.C. App. 1990); and even then, only in circumstances in which the state has not opposed the defendant's claim or in which the facts are not otherwise in dispute. See, e.g., *United States* v. *Brown*, supra, 1103; *People* v. *Vanley*, supra, 853; *Legrand* v. *United States*, supra, 788; *State* v. *Shegrud*, supra, 135. Indeed, in truly contested cases, we reasonably may presume that, in light of the adversarial nature of the proceeding, defense counsel will be particularly diligent in advising the defendant of the effect that a claim of mental disease or defect is likely to have on

the state did *not* agree with the defendant's affirmative defense of mental disease or defect; see id. (rule applies only in cases in which "state substantially agrees with the defendant's claim of mental disease or defect"); indeed, the state *successfully* challenged the defendant's claim at trial. Furthermore, the defendant in the present case, unlike Duperry, did not waive his right to a jury trial in exchange for the state's agreement not to contest his affirmative defense of mental disease or defect.

the defendant's rights.[36] In the absence of any precedent or other authority to indicate that a court is constitutionally required to canvass a defendant who pleads not guilty by reason of mental disease or defect, and in view of the fact that the state vigorously contested the defense raised by the defendant, we conclude that the defendant's due process rights were not implicated by virtue of the trial court's failure to canvass him regarding his plea of not guilty by reason of mental disease or defect.[37]

---

[36] We note that certain other claims or defenses available to criminal defendants also tend to reduce the burden on the state to prove one or more elements of a particular offense. For example, the affirmative defense of extreme emotional disturbance, like the affirmative defense of mental disease or defect, necessarily carries with it the defendant's acknowledgment that he committed the prohibited acts but that he did so with a less culpable mental state. Similarly, a claim of self-defense presupposes that the defendant committed the acts alleged by the state. No canvass of the defendant is required—constitutionally or otherwise—however, in cases involving claims of extreme emotional disturbance or self-defense.

We further note that, because the affirmative defense of extreme emotional disturbance is not a complete defense to the offense charged, a defendant who prevails on that claim still faces criminal sanctions for any lesser included offense of which he may be convicted. See General Statutes § 53a-54a (a). Insofar as a defendant who prevails on such a defense nevertheless may be exposed to a period of incarceration, the potential consequence of that successful defense is not altogether dissimilar from the consequence likely to flow from a successful claim of mental disease or defect, namely, a period of confinement pursuant to an order of commitment. See *Connelly* v. *Commissioner of Correction*, 258 Conn. 394, 405, 780 A.2d 903 (2001) (observing that order of commitment "is no less a deprivation of liberty [to an insanity acquittee] than that of a prison sentence [to a convicted felon]"). Although a defendant who establishes the affirmative defense of extreme emotional disturbance remains exposed to a potential term of incarceration upon conviction of a lesser offense, we do not require a canvass of that defendant for the purpose of ensuring that he is aware of the ramifications of his successful assertion of that defense.

[37] Furthermore, although we reaffirm the supervisory rule that we adopted in *Duperry* in recognition of certain similarities between guilty pleas and pleas of not guilty by reason of mental disease or defect, in *Duperry*, we expressly limited the applicability of that rule to future cases and to cases in which the trial essentially is not an adversary proceeding. *Duperry* v. *Solnit*, supra, 261 Conn. 329. As we have explained, the *Duperry* rule is unavailing to the defendant for both of those reasons. See footnote 35 of this opinion.

## IV

The defendant's final claim is that the trial court abused its discretion in denying his request for a presentence psychiatric examination pursuant to § 17a-566.[38] We disagree.

The following additional facts and procedural history are relevant to our resolution of this claim. After the trial court found the defendant guilty of murder but prior to sentencing, the defendant filed a motion for a diagnostic evaluation in accordance with § 17a-566. The trial court denied the motion without comment, and the defendant filed a motion for articulation. The trial court granted the defendant's motion and, in its articulation, stated in relevant part: "The court heard the . . . testimony of numerous defense witnesses, both lay and expert, on the issue of the defendant's mental condition. These witnesses included representatives of Whiting Forensic Institute. The court has read the reports entered by the defendant as full exhibits, including the four reports from the [department] and the four different versions of the report of [the physician who examined the defendant at the request of defense counsel]. Although the reports from the [department] were prepared for the purpose of determining the competence of the defendant to stand trial, the findings of the defendant's mental condition contained therein supplemented by the trial testimony are relevant for sentencing purposes as well. The court concludes that it has sufficient evidence regarding the defendant's mental condition to make an informed sentencing decision. Therefore, the court finds that an additional diagnostic evaluation would not be necessary."

The applicable legal principles are settled. "A court may order a psychiatric evaluation of a defendant only if it appears to the court that such person has a psychiatric

---

[38] See footnote 6 of this opinion.

disability and is a danger to himself or others. General Statutes § 17a-566. The trial court, acting on a motion pursuant to . . . § 17a-566, may rely on evidence such as psychiatric reports, the defendant's personal history and background, as well as the defendant's testimony and demeanor at trial. See *State* v. *Chance*, 236 Conn. 31, 62, 671 A.2d 323 (1996). It is within the discretion of the trial court to grant or [to] deny such a motion. *State* v. *DeAngelis*, 200 Conn. 224, 241, 511 A.2d 310 (1986)." (Internal quotation marks omitted.) *State* v. *Relliford*, 63 Conn. App. 442, 450, 775 A.2d 351 (2001).

"The purpose of an examination under [§ 17a-566] is not to determine competency to be sentenced. That section presumes that a convicted defendant will be sentenced. The purpose of an examination under [§ 17a-566] is to allow the commissioner of mental health to make recommendations as to certain offenders concerning the sentence to be imposed and the place of confinement." (Internal quotation marks omitted.) Id. Moreover, the use of § 17a-566 to obtain a psychiatric evaluation of a defendant in advance of sentencing "presupposes that the court does not have access to sufficient medical information to permit it to make an informed judgment as to the defendant's mental condition." *State* v. *Gates*, 198 Conn. 397, 404, 503 A.2d 163 (1986). Thus, when "the court has adequate psychiatric documentation of the defendant's mental condition, there is no need for it to utilize the statutory provisions concerning further examinations. . . . The presence of some degree of mental illness does not prevent or avoid the imposition of sentence by the court nor does it necessarily require that the court blindly and automatically implement the statutory machinery providing for psychiatric examinations." (Citation omitted; internal quotation marks omitted.) Id., 405.

In the present case, the trial court had ample information pertaining to the defendant's psychiatric history

and mental illness at the time of sentencing. Not only had the court heard detailed testimony regarding the defendant's mental condition at the time of the offense, but also had reviewed psychiatric reports pertaining to his competency to stand trial. Although the trial court, in its discretion, reasonably might have ordered an examination pursuant to § 17a-566, in light of the extensive and timely information and material already available to the court regarding the defendant's mental condition, we see no reason to second-guess the trial court's determination that there simply was no need for such an examination. We therefore reject the defendant's contention that the court abused its discretion in declining to order a presentence psychiatric examination under § 17a-566.

The judgment is affirmed.

In this opinion the other justices concurred.