STATE OF CONNECTICUT *v.* RICKY L. SHOCKLEY
(10503)

SPEZIALE, C. J., HEALEY, DALY, SPONZO and COVELLO, Js.

Argued October 6—decision released December 21, 1982

*Paul F. Thomas,* with whom was *Michael R. Sheldon,* for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Bernard Gaffney,* assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. The issue on this appeal, as framed by the defendant, is whether the defendant Ricky Shockley was denied any federal or state constitutional right, statutory right or right prescribed by rule of court to be tried by a jury where he has been tried by a court after the trial judge accepted his election of a court trial without first advising him that he had an absolute right to be tried by a jury.[1]

---

[1] In its appellate brief, the state, among its claims, argues that the defendant has not presented us with an appellate record adequate for us to review this claim and that it was never presented to the trial court. At oral argument before us the state expressly abandoned both of these claims.

In order to put this issue in context certain factual circumstances must be set out. On July 24, 1978, the defendant was arrested and charged in a three count information with kidnapping in the second degree with a firearm in violation of General Statutes § 53a-94a; sexual assault in the first degree with a firearm in violation of General Statutes § 53a-70a and burglary in the second degree with a firearm in violation of General Statutes § 53a-102a.[2] At his arraignment on August 8, 1978, the defendant pleaded not guilty to each of the three counts and elected to be tried by a jury of six. On May 9, 1980, the defendant, represented by a public defender, had a hearing on his motion to suppress identification before the court, *D. Shea, J.* Prior to the court's ruling on the motion to suppress, the defendant withdrew all his pleas and elections on the three counts of the original information. He then entered, and the court accepted, a plea of guilty under the doctrine of *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), to a substituted information which charged him with one count of sexual assault in the first degree.[3] Prior to accepting his *Alford* plea, the court informed him of the rights he would forego by his plea of guilty, including the right to have a trial and to have a jury decide his case.

[2] This is the order in which these three counts were charged in the original information of July 24, 1978.

[3] The substituted information recited the following:

"The following information is hereby substituted in place of the original information: JOHN M. BAILEY, State's Attorney for the County of Hartford, accuses Ricky Shockley of New Britain, Connecticut of SEXUAL ASSAULT IN THE FIRST DEGREE, and charges that at the City of New Britain, on or about the 27th day of May, 1978, the said Ricky Shockley did compel another person to engage in sexual intercourse by the threat of use of force against such person, which reasonably caused such person to fear physical injury, in violation of Section 53a-70 (a) (2) of the General Statutes."

On June 18, 1980, the defendant, then represented by recently retained private counsel, again appeared before the court, *D. Shea, J.*, and moved for permission to withdraw his *Alford* plea. The defendant testified at the hearing on this motion and acknowledged that at the time he entered his *Alford* plea he was told that he was entitled to have a jury make the decision on his case. The court granted the motion, ordered that all "original counts" be reinstated and that all "original pleas of not guilty" be reentered and assigned the case for trial. At the request of the defendant, however, the court permitted him to defer his election of a court or jury trial until he could discuss that matter with his new attorney.[4]

On Friday, July 11, 1980, the defendant appeared before the court, *A. Armentano, J.*, with his private counsel at which time the state told the court: "[I]n conferring with defense counsel, it is my understanding that there will be a change in the election; but, perhaps, your Honor could [sic] care

[4] "Mr. Forsyth [assistant state's attorney]: I take it not guilty pleas will enter to all counts.
"The Court: Yes; without the formality of re-arraigning him. The original pleas of not guilty will stand, and all the original counts will be reinstated, and we'll assign the case for trial.
"Mr. Crowley [defense attorney]: Mr. Shockley, I believe, told me he had made an election of trial by court. Should we inquire on that now, your Honor?
"The Court: I didn't know it was a court trial. Was it to be a court trial?
"Mr. Crowley: Is that your recollection, Mr. Shockley, that you elected to be tried by court? Do you want time to talk about that?
"The Defendant: Yes, I'd like to have time to talk with you about it.
"Mr. Crowley: All right, yes.
"The Court: The election here shows a jury of six. That's the only thing in the record, that it was a jury trial, and I don't see any indication that that was ever changed on the jacket here.
"Mr. Crowley: I'll discuss that with him, your Honor.
"The Court: All right. . . ."

to inquire." Defense counsel told the court that "[i]t is my understanding Ricky Shockley would like to withdraw his jury election and—and have a trial to the Court, your Honor. I don't know whether your Honor would like to inquire; but that's my understanding." At that time the defendant pleaded not guilty to each of the three counts and elected a court trial on each count. The court then spoke to the defendant concerning his election.[5] At that time the defendant acknowledged he knew he was entitled to a jury trial, that he could still have one if he wanted one, that he had a constitutional right to a jury trial, that a trial by court is by one judge and that he discussed it with his lawyer and "want to change to a Court, which is one judge . . . ." In saying he understood that he had a constitutional right to a jury trial, he answered in the affirmative to the court's next question: "You can have it any time you want as you

---

[5] At that time the following took place:

"The defendant: Not guilty.

"The Clerk: You elect a trial by court or by jury?

"The Defendant: Court.

"The Court: Mr. Shockley, you just changed your election from a jury to a court. And did you understand that?

"The Defendant: Yes, I did.

"The Court: You're entitled to a jury trial, as you know; and you can still have one if you want one.

"The defendant: Yes.

"The Court: After you talked to your lawyer and elected a change to the court side, which means one judge; is that right? The court is one judge. You understand that?

"The Defendant: Yes.

"The Court: Trial by Court is by a judge, one judge.

"The Defendant: By a Court.

"The Court: Yes, by one judge. The Court is one judge.

"Mr. Crowley: He's the judge.

"The Defendant: Yeah.

"The Court: In other words, when you elected a Court, you elected a trial by one judge. Is that your understanding?

"The Defendant: Right. Yes.

probably know." Thereafter, the court asked the defendant: "Do you have any questions whatsoever?" The defendant answered "[n]o." The court made a finding that the "[d]efendant knowingly, willingly and voluntarily waived his right to a jury trial and elected a trial by a Court, which is one judge . . ." and also declared that the "[c]ase is on trial now. . . ." The case was then continued until Monday, July 14, 1980.

On July 14, 1980, just prior to calling the first witness, the state moved to file an amendment to the information adding two more counts.[6] The proposed fourth count charged kidnapping in the second degree in violation of General Statutes § 53a-94 and the fifth count charged sexual assault

"The Court: All right. You understand you have a constitutional right on a jury trial.

"The Defendant: Yes.

"The Court: You can have it any time you want as you probably know.

"The Defendant: Yes.

"The Court: And you discussed it with your lawyer and want to change to a Court, which is one judge; is that right?

"The Defendant: Right.

"The Court: Do you have any questions whatsoever?

"The Defendant: No.

"The Court: No questions at all? You understand you're giving up the right to a jury trial?

"The Defendant: Yes, I understand.

"The Court: All right. The Court finds the Defendant knowingly, willingly and voluntarily waived his right to a jury trial and elected a trial by a Court, which is one judge. All right. Case is on trial now. You want to continue it until Monday at ten o'clock?

"Mr. Gaffney [assistant state's attorney]: Yes, your Honor.

"The Court: Trial case is marked on trial status. Start the case Monday morning at ten o'clock. Recess, Sheriff."

[6] The amendment to the information was as follows:

"The information is herein amended by adding the following counts:

"FOURTH COUNT: And the said Attorney further accuses the said Ricky Schockley [sic] of KIDNAPPING IN THE SECOND DEGREE, and charges that at the City of New Britain, on or about

in the first degree in violation of General Statutes
§ 53a-70 (a) (2). In arguing that the motion be
granted the state observed that both of these stat-
utes permitted the charging and prosecution of a
defendant both with and without a firearm, that
both of such counts while includable under the
existing counts could arguably, in the absence of
a concession by the defense,[7] not be lesser offenses
because they were of the same degree. The court,
*A. Armentano, J.*, questioned the necessity of the
amendment pointing out that the defendant "cer-
tainly can't be found guilty" on the first and fourth
counts at the same time and on the second and fifth
counts at the same time because of the element of
a firearm.[8] The court, however, granted the state's
motion and directed that the defendant be put to
plea on the added fourth and fifth counts. After
he pleaded not guilty to each count, the following
took place: "The Clerk: You elect a trial by court
or by jury? The Defendant: Court: The Court:
May we proceed? Anything else, Mr. Crowley? Mr.

---

the 27th day of May, 1978, the said Ricky Shockley did commit the
crime of kidnapping in the second degree, in that he abducted another
person, in violation of Section 53a-94 of the General Statutes.

"FIFTH COUNT: And the said Attorney further accuses the
said Ricky Shockley of SEXUAL ASSAULT IN THE FIRST
DEGREE, and charges that at the City of New Britain, on or about
the 27th day of May, 1978, the said Ricky Shockley did compel
another person to engage in sexual intercourse by the threat of use
of force, in violation of Section 53a-70 (a) (2) of the General
Statutes."

[7] The record is silent as to any such concession by the defense.
The state maintained, absent a concession, it "wouldn't want the
record to be unclear in that regard."

[8] Both General Statutes §§ 53a-94a and 53a-70a, which were
charged in the first and second counts respectively of the original
information as they related to the incident with which the defendant
was charged, required the element of a firearm. General Statutes
§§ 53a-94 and 53a-70 (a) (2) do not require the element of a firearm.

Gaffney?" to which counsel for the state and the defendant answered "[n]o."[9]

On July 15, 1980, after the state had rested its case, the court granted defense motions for judgment of acquittal on each of the three counts of the original information. Thereafter, on July 16, 1980, the defendant was found guilty on each of the counts added by the amendment of July 14, 1980. On August 18, 1980, the court denied the defendant's written motion for a new trial and his written petition for a new trial[10] and imposed sentence. This appeal followed.

The defendant essentially claims that he was denied his rights to a trial by jury under the United States and Connecticut constitutions, under state statute and under rule of court. He argues that he was entitled to a trial by jury under the sixth and fourteenth amendments to the United States constitution, under article first, § 8, of the Connecticut constitution, and under General Statutes § 54-82b.[11]

[9] The court and counsel thereupon discussed certain interrogatories and thereafter testimony was presented.

[10] The defendant based his claim for a new trial on the results of a lie detector test he took on August 15, 1980, and on the alleged failure of the state to answer fully and/or truthfully his interrogatories. We find nothing in the record to indicate that the defendant ever filed a motion in the trial court raising the issue that his right to a trial by jury had not been validly waived.

[11] General Statutes § 54-82b provides: "RIGHT TO TRIAL BY JURY. (a) Any party to a criminal action in the superior court may demand a trial by jury of issues which are triable of right by a jury. There is no right to trial by jury in criminal actions where the maximum penalty is a fine of ninety-nine dollars or a sentence of thirty days, or both.

"(b) In criminal proceedings the judge shall advise the accused of his right to trial by jury at the time he is put to plea and, if the accused does not then claim a jury, his right thereto shall be deemed waived, but if a judge acting on motion made by the accused within ten days after judgment finds that such waiver was made when the accused was not fully cognizant of his rights or when, in the opinion

Furthermore, he claims that the mandatory procedure required by § 54-82b and Practice Book § 839[12] in making his election of a court trial were not followed by the trial judge. Accordingly, he argues, there was no valid waiver demonstrated by the record of his right to trial by jury because of this "plainly erroneous" action of the trial court and a remand for a new trial is required. The state maintains that the record amply demonstrates that the defendant validly waived his right to a jury trial. In doing so, it claims that the defendant's arraignment on July 14, 1980, on the two added counts was unnecessary because these two counts were "simply lesser included offenses of two of the original three crimes" upon which he had already waived a jury trial. Alternatively, the state takes the position that even if an arraignment and election on July 14, 1980, on the added counts was necessary, the record, nevertheless, still demonstrates a valid waiver by the defendant of his right to a jury trial.

Under both the United States and Connecticut constitutions the defendant was entitled to a trial by jury on the charges upon which he was presented and in fact tried. *Duncan* v. *Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491, reh. denied,

of the judge, the proper administration of justice requires it, the judge shall vacate the judgment and cause the proceeding to be set for jury trial.

"(c) In any criminal trial by a jury, except as otherwise provided by law, such trial shall be by a jury of six."

[12] Practice Book § 839 provides: "——RIGHT TO JURY TRIAL AND WAIVER

"The defendant in a criminal action may demand a trial by jury of issues which are triable of right by jury. If at the time he is put to plea, he elects a trial by the court, the judicial authority shall advise the defendant of his right to a trial by jury. If the defendant does not then elect a jury trial, his right thereto may be deemed to have been waived."

392 U.S. 947, 88 S. Ct. 2270, 20 L. Ed. 2d 1412 (1968);[13] Conn. Const., art. I §§ 8, 19;[14] *State* v. *Olds,* 171 Conn. 395, 408, 370 A.2d 969 (1976). Any defendant may waive that right but only if he does so knowingly and intelligently. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 237–38, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Singer* v. *United States,* 380 U.S. 24, 34, 85 S. Ct. 783, 13 L. Ed. 2d 630 (1965). In *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), the United States Supreme Court articulated a classic definition of waiver in stating that it was ordinarily "an intentional relinquishment or abandonment of a known right." We have said that "[a] valid waiver of a constitutional right . . . must be knowing and intelligent, accomplished with sufficient awareness of the relevant circumstances and likely consequences." *State* v. *Reed,* 174 Conn. 287, 293, 386 A.2d 243 (1978); see *Brady* v. *United States,* 397

---

[13] In *Duncan* the United States Supreme Court held that the right to trial by jury in criminal cases was applicable to the states through the fourteenth amendment. *Duncan* v. *Louisiana,* 391 U.S. 145, 149, 88 S. Ct. 1444, 20 L. Ed. 2d 491, reh. denied, 392 U.S. 947, 88 S. Ct. 2270, 20 L. Ed. 2d 1412 (1968).

[14] The constitution of Connecticut, article first, §§ 8, 19, provide: "SEC. 8. In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury, except in the armed forces, or in the militia when in actual service in time of war or public danger.

"SEC. 19. The right of trial by jury shall remain inviolate."

U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). " '[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights and . . . 'do not presume acquiescence in the loss of fundamental rights.' " (Citations omitted.) *Johnson* v. *Zerbst,* supra. In addition, a waiver of a fundamental constitutional right is not to be presumed from a silent record. See *Boykin* v. *Alabama,* 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

Even under this strict standard governing the waiver of constitutional rights the record in this case clearly demonstrates a knowing and voluntary waiver. This finding is not based solely on a reading of the events that transpired on July 14, 1980, immediately prior to the presentation of evidence. Rather our conclusion is based upon the whole record, particularly that of July 11, 1980, and July 14, 1980. "[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the *unique circumstances of each case.*" (Emphasis added.) *Adams* v. *United States ex rel. McCann,* 317 U.S. 269, 278, 63 S. Ct. 236, 87 L. Ed. 268 (1942) (Frankfurter, J.). The "determination of whether there has been an intelligent waiver . . . must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson* v. *Zerbst,* supra; see *Brady* v. *United States,* supra, 749.

We are not faced with a silent record such as that found in such cases as *Boykin* and *Zerbst.* We have already chronicled this defendant's experiences and exposure in this case to the entering and withdrawal of pleas and elections. In addition, he was twenty-

three years old at the time of trial and had completed two years of high school. Prior to this case the defendant, charged with burglary, had pleaded guilty, under a substitute information, to a misdemeanor for which he was given probation. He had also pleaded guilty to a charge of disorderly conduct. His involvement with the law dated back to 1974. The defendant was not a novice in the criminal justice system on July 14, 1980. See, e.g., *State* v. *Reid,* 204 Kan. 418, 421, 463 P.2d 1020 (1970). Nor can it fairly be said that the record presents a picture of a defendant "bewildered by court processes strange and unfamiliar to him . . . ." See *Smith* v. *O'Grady,* 312 U.S. 329, 334, 61 S. Ct. 572, 85 L. Ed. 859 (1941). After the public defender ceased to represent him, private counsel was retained and appeared in court with him not only when he withdrew his *Alford* plea on June 18, 1980,[15] but also on July 11, 1980, and July 14, 1980. We do not take the position that the presence of retained counsel automatically means that the defendant's interests and rights are protected. It has been held, however, that "[t]he fact of counsel being present and having advised the defendant is a factor to be considered in determining the question of the need for or sufficiency of any admonition given by the court." *Neller* v. *State,* 79 N.M. 528, 534, 445 P.2d 949 (1968); see *Henderson* v. *Morgan,* 426 U.S. 637, 647, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976). On July 11, 1980, when the defendant changed his election from a jury trial to a court trial, the trial court asked the defendant if he was doing so *after* he

---

[15] The transcript of June 18, 1980, at which time the defendant moved to withdraw his *Alford* plea to the substituted information charging sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) indicates that he did so after an agreement as to what would happen.

talked to his lawyer, and the defendant so indicated. At that time the court asked him this *twice*. The defendant also indicated *twice* that he understood that he was changing his election to a court trial. Quite apart from the presence of counsel, the election of a court trial on July 14, 1980, to the added fourth and fifth counts, both in the inquiry of the trial court and the election by the defendant, must be viewed in context, especially with reference to the colloquy of July 11, 1980, between the defendant and the same judge. Under these circumstances, we find that the defendant understood the consequences of his election of a trial to the court, and that he knowingly and intelligently waived his constitutional rights to a jury trial.

Our finding that the requirements of the state and federal constitutions have been fully complied with, however, does not put an end to our inquiry. The trial court did not follow the requirements of General Statutes § 54-82b and Practice Book § 839. General Statutes § 54-82b provides in part that "[i]n criminal proceedings the judge shall advise the accused of his right to trial by jury at the time he is put to plea and, if the accused does not then claim a jury, his right thereto shall be deemed waived . . . ." General Statutes § 54-82b (b). The Practice Book rule likewise provides that "[t]he defendant in a criminal action may demand a trial by jury of issues which are triable of right by jury. If at the time he is put to plea, he elects a trial by the court, the judicial authority shall advise the defendant of his right to a trial by jury. If the defendant does not then elect a jury trial, his right thereto may be deemed to have been waived." Practice Book § 839. In regard to these requirements, the defendant argues there is only "one reasonable

interpretation [and that is that] at the same proceedings at which the defendant is put to plea, the judge must ask him if he wants a trial by jury or by the court." Accordingly, he concludes that the failure of the court so to advise him requires the reversal of his conviction.

We begin our analysis of this prong of the defendant's claim by pointing out that in the context of guilty pleas there is no constitutional requirement that the trial judge advise the defendant personally eo nomine as to each right the defendant is giving up by pleading guilty—one of those being the right to a jury trial. See *Brady* v. *United States,* 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 749 (1970). The true substantive question is whether the election was in fact intelligently and voluntarily made and the record so demonstrates. See *State* v. *Slater,* 169 Conn. 38, 46, 362 A.2d 499 (1975); *Smith* v. *State,* 264 Ark. 329, 333, 571 S.W.2d 591 (1978). The same concern must be relevant to this case. The fact that the record does not disclose a waiver at the very moment of the election does not, per se, mandate reversal in this case. To do so here is "to ignore the record and reality."[16] *United States* v. *Washington,* 431 U.S. 181, 188, 97 S. Ct. 1814, 52 L. Ed. 2d 238 (1977). We, therefore, hold that, under the circumstances of this case, the defendant validly waived his right to a jury trial.

[16] In *United States* v. *Saft,* 558 F.2d 1073 (2d Cir. 1977), the second circuit affirmed the refusal to permit the withdrawal of a guilty plea. In *Saft,* the defendant claimed the trial court did not advise him under rule 11(c)(3) of the Federal Rules of Criminal Procedure that he would have the right to the assistance of counsel. In going over the circumstances that led to the rejection of this claim the court said, "it would defy reality to suppose that Saft had any doubt on this score. . . . The Supreme Court has very recently instructed us not to 'ignore the record and reality. *United States* v. *Washington,* 431 U.S. 181, 188, 97 S. Ct. 1814, 1819, 52 L. Ed. 2d 238 (1977).'" *United States* v. *Saft,* supra, 1080.

While the better practice is to have the record at the time of election literally disclose the inquiries of the court and the answers of the accused, a valid waiver may still be found in a given case if the record affirmatively discloses that the defendant intelligently and knowingly did waive his right to a trial by jury. See *Ciummei* v. *Commonwealth,* 378 Mass. 504, 392 N.E.2d 1186 (1979). Such a conclusion is not inconsistent with such cases as *State* v. *Cook,* 183 Conn. 520, 522, 441 A.2d 41 (1981), where we determined the word "shall" in Practice Book § 594 was mandatory and not directory. In *Cook* we stated that "[i]t has long been recognized that penal statutes and rules of criminal procedure are to be strictly construed to protect the fundamental constitutional right to liberty" and accordingly applied the rule of strict construction to Practice Book § 594. *State* v. *Cook,* supra, 522. While a penal statute[17] is subject to strict construction, we have also said that " '[t]he rule that penal statutes are to be strictly construed need not be applied so tightly that an obvious legislative purpose or intent is stifled. *State* v. *Levy,* 103 Conn. 138, 141, 130 A. 96 [1925]; *State* v. *Faro,* 118 Conn. 267, 273, 171 A. 660 [1934].' " *State* v. *Cataudella,* 159 Conn. 544, 556, 271 A.2d 99 (1970); see *State* v. *Pastet,* 169 Conn. 13, 21–22, 363 A.2d 41, cert. denied, 423 U.S. 937, 96 S. Ct. 297, 46 L. Ed. 2d 270 (1975); *State* v. *Sober,* 166 Conn. 81, 91, 347 A.2d 61 (1974); *State* v. *Benson,* 153 Conn. 209; 215, 214 A.2d 903 (1965); *State* v. *Archambault,* 146 Conn. 605, 607–608, 153 A.2d 451 (1959). Moreover, "[s]ound rules of statutory interpretation exist to discover and not to direct the Congressional will."

---

[17] In *Cook,* we pointed out that while a Practice Book rule is not a statute, "the rules of statutory construction, however, are clearly applicable." *State* v. *Cook,* 183 Conn. 520, 521, 441 A.2d 41 (1981).

*United States ex rel. Marcus* v. *Hess,* 317 U.S. 537, 542, 63 S. Ct. 379, 87 L. Ed. 443, reh. denied, 318 U.S. 799, 63 S. Ct. 756, 87 L. Ed. 1163 (1943). It is a fair inference that the rule of narrow construction has a core interest in the concern of the law for individual rights. See *Huddleston* v. *United States,* 415 U.S. 814, 831, 94 S. Ct. 1262, 39 L. Ed. 2d 782 (1974).

In the present case, the "evident design of the lawgiver"; *State* v. *Pastet,* supra; whether the right here was based on constitutional or statutory grounds or on the rules of court, was obviously to protect the defendant as well as to foster the broad interest of society in the finality of such proceedings. See *State* v. *Ballard,* 66 Ohio St. 2d 473, 478, 423 N.E.2d 115 (1981). We have already indicated that the constitutional rights of the defendant were amply protected when he chose a trial to the court. The defendant's rights are not protected only by adhering to a predetermined ritualistic form of making the record. "Matters of reality, and not mere ritual, should be controlling." *McCarthy* v. *United States,* 394 U.S. 459, 467–68 n.20, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969), quoting *Kennedy* v. *United States,* 397 F.2d 16, 17 (6th Cir. 1968); see *Arizona* v. *Jackson,* 14 Ariz. App. 594, 595, 485 P.2d 583 (1971); *Silverberg* v. *Warden,* 7 Md. App. 657, 660, 256 A.2d 821 (1969); *State* v. *Ballard,* supra, 480.

The narrowness of our opinion can be emphasized by distinguishing this case from *State* v. *Anonymous (1980–8),* 36 Conn. Sup. 551, 421 A.2d 867 (1980). There, the court noted that the record did not indicate "that the [trial] court at *any time* advised the defendant of his right to a jury trial." (Emphasis added.) Id., 554. In fact, the defendant

actually made a motion for a jury trial which was denied by the trial court as being untimely. Here, conversely, the defendant was fully informed of his right to a jury trial at the hearing of July 11, 1980, and was told by the court that he could have a jury trial "at any time you want . . . ."

Under the unique circumstances of this case, where the defendant validly waived his constitutional right to a jury trial, we hold that the failure of the court to follow the verbatim requirements of General Statutes § 54-82b and Practice Book § 839, does not amount to reversible error.[18]

There is no error.

In this opinion DALY, SPONZO and COVELLO, Js., concurred.

SPEZIALE, C. J., (concurring). I concur in the result. I cannot, however, join the majority because when a statute or Practice Book rule is mandatory, it is clearly error for a court not to comply with it. General Statutes § 54-82b(b) provides, in relevant part: "In criminal proceedings the judge *shall* advise the accused of his right to trial by jury *at the time he is put to plea* and, if the accused does not *then* claim a jury, his right thereto shall be deemed waived. . . ." (Emphasis added.) Practice Book § 839 provides, in relevant part: "If *at the time he is put to plea,* [the defendant] elects a trial by the court, the judicial authority *shall* advise the defendant of his right to a trial by jury." (Emphasis added.)

---

[18] Our resolution of this issue makes it unnecessary for us to decide whether General Statutes § 53a-94 is a lesser included offense of General Statutes § 53a-94a, or whether General Statutes § 53a-70 (a) (2) is a lesser included offense of General Statutes § 53a-70a.

It is axiomatic that "penal statutes and rules of criminal procedure are to be strictly construed to protect the fundamental constitutional right to liberty." *State* v. *Cook,* 183 Conn. 520, 522, 441 A.2d 41 (1981). When construing statutes, words are to be given their ordinary meaning. General Statutes § 1-1. "Unless the text indicates otherwise, the word 'shall' must be assumed to have been used with full awareness of its ordinary meaning. *Graham* v. *Zimmerman,* 181 Conn. 367, 371, 435 A.2d 996 (1980)." *State* v. *Cook,* supra; see also *Shulman* v. *Zoning Board of Appeals,* 154 Conn. 426, 428–29, 226 A.2d 380 (1967). These rules of construction apply both to statutes and to the rules of practice. *State* v. *Cook,* supra.

Practice Book § 839 is particularly applicable to the facts of this case. As mentioned above, that section states that if "at the time he is put to plea, [the defendant] elects a trial by the court, the judicial authority shall advise the defendant of his right to a trial by jury." The rule describes exactly the situation confronting the trial court on July 14, 1980. The defendant was put to plea on two new counts, and he elected a trial to the court. The trial court, however, did not follow the mandate of the Practice Book and of General Statutes § 54-82b(b) at the time of taking the pleas, because it did not inform the defendant of any rights at that time. On that day, only the court clerk addressed the defendant concerning his election of either a court or a jury trial. Because the trial court ignored the clear mandate of General Statutes § 54-82b(b) and Practice Book § 839, it committed error. Any attempt by this court to rationalize such clear error threatens to abrogate the meaning of the word "shall" in both the statute and the rule.

The error committed here, however, does not require that we order a new trial. The majority opinion demonstrates that the trial court addressed the defendant in detail at the July 11, 1980 plea hearing, and received answers from him which clearly indicate that his choice of a court trial and waiver of a jury trial were knowingly and intelligently made. Under the unusual circumstances of this case, I agree that we should not find reversible error.