STATE OF CONNECTICUT *v.* CURTIS GORE
(AC 26304)

DiPentima, Gruendel and Lavine, Js.

Argued April 20—officially released August 1, 2006

*Kent Drager*, senior assistant public defender, for the appellant (defendant).

*Melissa Streeto Brechlin*, assistant state's attorney, with whom, on the brief, were *Thomas Griffin*, supervisory assistant state's attorney, and *Stephen M. Carney*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Curtis Gore, was charged with assault of an employee of the department of correction in violation of General Statutes § 53a-167c (a) (1).

The defendant pleaded not guilty and elected to be tried by the court. Following a trial, the court found him guilty of assault of an employee of the department of correction. On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction, (2) the court failed to ensure that his waiver of his constitutional right to a jury trial was knowing, intelligent and voluntary, and (3) the court improperly admitted certain testimony into evidence. We agree with the defendant's second claim and conclude that the record is devoid of any evidence that he made a knowing, intelligent and voluntary waiver of his right to a jury trial. We reverse the judgment of conviction on that basis.

The court reasonably could have found the following facts. In August, 2003, the defendant was incarcerated at the Corrigan Correctional Institution in Uncasville and assigned as an inmate to the restrictive housing unit. The unit, consisting of eleven cells that are parallel to one another, functions as a segregation area in which inmates remain confined to their cells for twenty-three hours a day. In the center of the unit is a protected glass area, known as the control station, where a correction employee monitors the inmates. During second shift duty, there is one correction employee who stays in the control station and two correction employees who patrol the outside of the cells. Each individual cell door contains a small metal rectangular sliding door that is utilized by the correction employees to deliver meals to the inmates.

On August 18, 2004, correction employees Christopher Hanney, Jason Ware and Joseph Iozzia were assigned to second shift duty at the restrictive unit. Iozzia was assigned to the control station, and Hanney and Ware were patrolling the area outside the cells. All three employees were informed prior to beginning their shift that the defendant had been disruptive all day because he was upset that he would not be receiving

a vegetarian meal. The defendant had failed to put in the proper request for the vegetarian meal.

At approximately 4:05 p.m., Hanney and Ware began delivering the meals to the inmates through the sliding doors. This procedure involved Ware's unlocking the door and sliding it open, providing each inmate with a beverage and leaving the door open for Hanney to slide the meal through. When Hanney arrived at the defendant's door, he asked the defendant if he wanted his meal. The defendant initially refused to eat the regular meal but then told Hanney that he would eat it. The defendant then stuck his hands through the door, which prevented Hanney from sliding the food tray through the door. Hanney repeatedly ordered the defendant to pull his hands back through the door, so that he could deliver the food tray. The defendant refused to move his hands. Ware joined Hanney, and they both threatened to close the sliding door if the defendant did not move his hands. The defendant refused to comply with the order, prompting Hanney to attempt to close the sliding door. As he attempted to do so, the defendant grabbed Hanney's hands, and using his fingernails, cut Hanney's fingers, hands and wrist. Hanney was able to remove his hands from the defendant's grip and closed the sliding door. The defendant was charged with assault of an employee of the department of correction, tried, convicted and ultimately sentenced. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the evidence was insufficient to support the court's finding of guilt on the charge of assault of an employee of the department of correction. Specifically, the defendant argues that the state failed to prove beyond a reasonable doubt that he had

the specific intent to prevent Hanney from performing his duty.[1] We are not persuaded.

The defendant failed to move for a judgment of acquittal at the conclusion of the state's case or before the case was submitted to the court or to move to set aside the finding of guilt and now seeks to prevail on appeal under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). *Golding* review is not necessary to resolve the defendant's claim. See *State* v. *Ashe*, 74 Conn. App. 511, 514, 812 A.2d 194, cert. denied, 262 Conn. 949, 817 A.2d 108 (2003). "Unpreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof. . . . Our Supreme Court has stated that *Jackson* v. *Virginia*, [443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979)], compels the conclusion that any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of [*Golding*]. . . . Thus . . . there is no practical reason for engaging in a *Golding* analysis of a claim based on the sufficiency of the evidence . . . ." (Internal quotation marks omitted.) *State* v. *Ashe*, supra, 514.

The standard of review for sufficiency of the evidence claims has been stated frequently and is well established. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict.

---

[1] As our Supreme Court has stated, "[i]nterests of judicial efficiency, sound appellate policy and fundamental fairness require a reviewing court to address a defendant's insufficiency of the evidence claim prior to remanding a matter for retrial because of trial error. Pursuant to *Burks* v. *United States*, 437 U.S. 1, 18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978), a defendant is entitled to a judgment of acquittal and retrial is barred if an appellate court determines that the evidence is insufficient to support the conviction." *State* v. *Padua*, 273 Conn. 138, 178, 869 A.2d 192 (2005).

Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 146–47, 869 A.2d 192 (2005).

"It is well established that the question of intent is purely a question of fact. . . . Intent may be, and usually is, inferred from the defendant's verbal or physical

conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Citation omitted; internal quotation marks omitted.) *State* v. *Porter*, 76 Conn. App. 477, 487–88, 819 A.2d 909, cert. denied, 264 Conn. 910, 826 A.2d 181 (2003).

Pursuant to § 53a-167c (a), to prove assault of an employee of the department of correction, the state must prove beyond a reasonable doubt that the defendant "with intent to prevent a reasonably identifiable . . . employee of the Department of Correction . . . from performing his . . . duties, and while such . . . employee . . . is acting in the performance of his . . . duties, (1) such person causes physical injury to such . . . employee . . . ." General Statutes 53a-167c (a) (1). In the present case, the defendant contends that the evidence was not sufficient to prove that he had the specific intent to prevent Hanney from performing his duties. The defendant's claim appears to be that while the evidence may have been sufficient to permit the court to conclude that he intended to harm Hanney, it was not sufficient to permit the court to conclude that he intended to prevent Hanney from performing his duties.

The cumulative impact of the evidence in this case sufficiently enabled the court to conclude beyond a reasonable doubt that the defendant was guilty of assault of a department of correction employee. The evidence indicates that Hanney was in uniform at the time of the incident and that the defendant knew that he was a department of correction employee. The evidence

further indicates that Hanney was carrying out his lawful duty in an orderly manner at the time the defendant became angry, grabbed Hanney's hands outside the sliding door and scratched his wrist, hand and fingers. Under those circumstances, the court reasonably could have found that when the defendant grabbed Hanney's hands and scratched him, causing injury, he intended not only to harm Hanney, but also to prevent him from performing his duties. The fact that the defendant may have been actuated by two separate intents does not diminish either one individually. "Given the complexity of human behavior, the existence of the intent required for commission of a crime may be blurred by the presence of multiple intents. An intent is forward looking; it is the end in view, the object to be accomplished by the action taken, which is its criterion. (See Anscombe, Intention [2d ed. 1976]). An action may be taken with many ends in view. Where one of them is an element of the offense, it satisfies the scienter required for the offense, notwithstanding the presence of additional and extraneous intents." *People* v. *Brady*, 190 Cal. App. 3d 124, 136 n.4, 235 Cal. Rptr. 248 (1987); see also 1 W. LaFave, Substantive Criminal Law (2d Ed. 2003) § 5.2 (d), pp. 351–52.[2] We conclude that the evidence was sufficient to persuade the court that the state had proved beyond a reasonable doubt that the defendant had the specific intent to prevent Hanney from performing his duty and that, therefore, the evidence was sufficient to support a conviction of assault of an employee of the department of correction.

## II

The defendant next claims that the court improperly found that he effectively waived his right to a jury trial.

---

[2] "A person often acts with two or more intentions. These intentions may consist of an immediate intention (intent) and an ulterior one (motive). . . . [S]o long as the defendant has the intention required by the definition of the crime, it is immaterial that he may also have had some other intention." 1 W. LaFave, supra, § 5.2 (d), pp. 351–52.

The defendant concedes that this claim was not raised at trial and, thus, was not preserved for our review. He now seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40.[3] We will review the defendant's claim, as the record is adequate for review and the alleged violation is of constitutional magnitude because it involves his constitutional right to a jury trial.

We begin by setting forth the applicable standard of review. "The right to a jury trial in a criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be knowing and intelligent, as well as voluntary. . . . Relying on the standard articulated in *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), we have adopted the definition of a valid waiver of a constitutional right as the intentional relinquishment or abandonment of a known right. . . . This strict standard precludes a court from presuming a waiver of the right to a trial by jury from a silent record. . . . In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case. . . . When such a claim is first raised on appeal, our focus is on compliance with these constitutional requirements rather than on observance of analogous procedural rules prescribed by [General Statutes § 54-82b (b)] or by . . . Practice Book [§ 42-1]."[4] (Citations omitted; internal quotation

---

[3] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[4] General Statutes § 54-82b (b) provides: "In criminal proceedings the judge shall advise the accused of his right to trial by jury at the time he is put to plea and, if the accused does not then claim a jury, his right thereto

marks omitted.) *State* v. *Ouellette*, 271 Conn. 740, 751–52, 859 A.2d 907 (2004).

The following additional facts are necessary for the resolution of the defendant's claim. The defendant entered a pro forma not guilty plea and a jury election on September 23, 2004. Prior to the defendant's entering his plea, the court gave a general advisement of rights on two occasions when the defendant's case was on the court calendar.[5] When the case was called for trial on November 17, 2004, the following colloquy took place between the court and defense counsel:

"[Defense Counsel]: Your Honor, [the defendant] and I had a lengthy discussion a few moments ago about how to proceed in this case, and at this point, I believe, we're changing our election, if election was made, from a jury trial to a court trial.

"The Court: All right.

"[Defense Counsel]: December 9, Your Honor.

"The Court: All right. We'll set this matter for a trial on December 9. Be a two o'clock trial?

shall be deemed waived, but if a judge acting on motion made by the accused within ten days after judgment finds that such waiver was made when the accused was not fully cognizant of his rights or when, in the opinion of the judge, the proper administration of justice requires it, the judge shall vacate the judgment and cause the proceeding to be set for jury trial."

Practice Book § 42-1 provides: "The defendant in a criminal action may demand a trial by jury of issues which are triable of right by jury. If at the time the defendant is put to plea, he or she elects a trial by the court, the judicial authority shall advise the defendant of his or her right to a trial by jury and that a failure to elect a jury trial at that time may constitute a waiver of that right. If the defendant does not then elect a jury trial, the defendant's right thereto may be deemed to have been waived."

[5] The court gave a general advisement of rights on September 2, 2004, and then again on September 23, 2004. The record does not reveal, however, whether the defendant was actually in the courtroom during those advisements. Nor does it indicate that the defendant was individually addressed with respect to his rights generally or with respect to his right to a jury trial, specifically.

"[Defense Counsel]: Yes.

"The Court: All right. Two o'clock."

The court did not address the defendant personally concerning the waiver of a jury trial. The defendant argues that the failure of the court to conduct such an examination and to advise him of his constitutional right to a jury trial made the waiver invalid. The state contends that the two general advisements made by the court, coupled with the assertion made by defense counsel create a record that shows that the defendant affirmatively waived his right to a jury trial. We disagree with the state.

It is an established principle in this state that "a waiver of a fundamental constitutional right is not to be presumed from a silent record. See *Boykin* v. *Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)." *State* v. *Shockley*, 188 Conn. 697, 707, 453 A.2d 441 (1982). Contrary to the assertion put forth by the state that the record is not silent, the mere election by defense counsel of a court trial and the recitation of the advisement of rights by the court made prior to defense counsel's subsequent assertion of the defendant's election of a court trial are not sufficient to indicate that the defendant knowingly, intelligently and voluntarily waived a jury trial. "[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . do not presume acquiescence in the loss of fundamental rights." (Internal quotation marks omitted.) Id. We do not base our conclusion merely on the absence of a verbal exchange between the court and the defendant; see *State* v. *Crump*, 201 Conn. 489, 503, 518 A.2d 378 (1986); but rather on the court's failure to discern whether the defendant was aware of the rights his counsel was purporting to waive

on his behalf by electing a court trial.[6] Such a fundamental right cannot be waived on the basis of defense counsel's assertion. See *Taylor* v. *Illinois*, 484 U.S. 400, 417–18, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988).

We conclude, in light of the totality of the circumstances on the record, that the waiver made by defense counsel on the defendant's behalf was constitutionally deficient. Accordingly, we reverse the judgment of the trial court and remand the case for a new trial. In light of our resolution of this issue, we need not reach the defendant's final claim on appeal.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[6] We note that there is no evidence in the record that a written waiver was sought or obtained from the defendant. See *State* v. *Crump*, supra, 201 Conn. 504.