## STATE OF CONNECTICUT *v.* JOSEPH SMITH
### (AC 27136)

Schaller, McLachlan and Gruendel, Js.

Argued January 12—officially released April 3, 2007

*Elizabeth M. Inkster*, senior assistant public defender, with whom, on the brief, was *Adele V. Patterson*, acting chief of habeas corpus services, for the appellant (defendant).

*Sarah Hanna*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Roger S. Dobris*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Joseph Smith, appeals from the judgment of the trial court, rendered after a trial to the court, convicting him of the crimes of robbery in the second degree in violation of General Statutes § 53a-135 (a) (2), larceny in the second degree in violation of General Statutes § 53a-123 (a) (3) and carrying a dangerous weapon in violation of General Statutes § 53-206 (a). The defendant claims that the court, aware of previous concerns about his competency, failed to conduct an adequate canvass to ensure that his waiver of his right to a jury trial was knowing, voluntary and intelligent as required by the federal and

state constitutions. We disagree and affirm the judgment of the trial court.

The following factual and procedural background is relevant to our consideration of the defendant's claims on appeal. The defendant was originally charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), in addition to the offenses previously mentioned. He pleaded not guilty and elected a trial by jury.

Prior to trial, defense counsel moved for a competency evaluation and hearing pursuant to General Statutes § 54-56d,[1] which was granted by the court, *Fasano, J.* At the hearing, Bruce Knox, a clinical social worker, testified on behalf of the clinical team that examined the defendant. Knox indicated that the team had concluded that the defendant was not competent to stand trial. That conclusion was based, in part, on the defendant's refusal to cooperate when he was interviewed. The defendant also testified at that hearing, gave reasons for his failure to cooperate and assured the court that he would cooperate with the team if the court ordered another evaluation. Judge Fasano did not make a finding as to the defendant's competency and ordered a reevaluation.

The defendant was examined again, and the clinical team issued its report. On August 27, 2003, the court, *Thompson, J.*, held a second competency hearing. Joan Roth, a psychologist and a member of the clinical team, testified that the team had concluded that the defendant was not competent to stand trial. The defendant claimed that he was competent, and defense counsel cross-examined Roth. On cross-examination, she testified that

---

[1] General Statutes § 54-56d (c) provides: "If, at any time during a criminal proceeding, it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency."

the defendant was alert, oriented, aware of his surroundings, of average intelligence and that his memory was generally satisfactory. She also testified, however, that many of his responses were inconsistent and that he lacked the ability to appreciate the team's questions or to understand the nature of the evaluation. At the court's request, and with the defendant's consent, Roth agreed to remain in the courtroom to hear the defendant's testimony and to be recalled to the witness stand to answer additional questions about the defendant's competency on the basis of that testimony.

The defendant was questioned first by defense counsel. He testified correctly as to the roles of his counsel, the prosecutor, the judge and the marshals. He also correctly recited the offenses with which he had been charged and stated that he would be sent to prison if convicted of those charges. On cross-examination by the prosecutor, the defendant testified that he had been reluctant to respond to the team's questions because he did not want to disclose his medical condition to the team and because his attorney was not present at the time of the questioning.

At the conclusion of the cross-examination, the court, with the consent of defense counsel, questioned the defendant. In response to the court's questions, the defendant accurately described the offenses of robbery, larceny and threatening.[2] He also told the court the substance of the state's claims and indicated that the state would have to prove those claims beyond a reasonable doubt. Finally, the defendant assured the court that he would be able to work with his counsel and assist in his defense.

[2] The defendant was originally charged with threatening in the second degree in violation of General Statutes (Rev. to 2001) § 53a-62, as amended by Public Acts, Spec. Sess., November, 2001, No. 01-2, § 8. That charge was not pursued by the state.

Roth resumed the witness stand. The court indicated that the defendant appeared to understand the charges against him, the roles of key individuals in the courtroom, the basis of the state's claims and that he would be able to discuss those matters with his attorney. Roth agreed but stated that she still was unclear as to how much information was being withheld volitionally by the defendant and how much of the withholding was due to his confusion or inability to understand. She additionally stated that she had concerns about the defendant's ability "to trust the process."

At the conclusion of the testimony and closing arguments by counsel, the court stated that the presumption of competence had not been rebutted[3] and found the defendant competent to stand trial. In support of its conclusion, the court noted that the team's opinion that the defendant was not competent was based largely on the lack of information he provided during the interview, whereas his testimony indicated a clear understanding of the charges, the proceedings and the allegations against him. The court's determination on August 27, 2003, that the defendant was competent to stand trial has not been challenged on appeal.

On September 17, 2003, Judge Fasano granted the defendant's motion for a speedy trial. Jury selection commenced on October 10, 2003. After the completion of jury selection, on the day that the trial was scheduled to begin, defense counsel indicated that the defendant, against counsel's advice, had decided to change his election from a jury trial to a court trial. The court then canvassed the defendant on his waiver of his right to

[3] General Statutes § 54-56d (b) provides: "A defendant is presumed to be competent. The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and conduct its own inquiry."

a jury trial.[4] After the canvass, the state indicated that it was filing a substitute information, in which the charge of robbery in the first degree was being dropped. The defendant was then put to plea on the substitute

---

[4] At that time, the following colloquy occurred:

"The Court: Mr. Smith, would you stand up please, sir. Mr. Smith, I understand from your attorneys . . . that you wish to waive the jury trial and try the case before the court; is that correct, sir?

"[The Defendant]: Yes, sir.

"The Court: By 'the court,' that means me.

"[The Defendant]: Yes, sir.

"The Court: Do you understand, of course, and I'm sure you have discussed this with your attorneys, that you have an absolute right to have your case tried before a jury and you understand that you are giving up that right?

"[The Defendant]: Yes, sir.

"The Court: Okay. Also, generally, when there is a jury trial, the jury makes a determination as to whether or not the defendant is guilty or not guilty of the charges against him; if the verdict should come back guilty, then it's the court, me, that does the sentencing.

"[The Defendant]: Yes, sir.

"The Court: But in a court trial, not only do I—in other words, I would be the person to make the finding as to guilt or not guilt, and if you were to be found guilty, I would also be the person that would do the sentencing; do you understand that?

"[The Defendant]: Yes, sir.

"The Court: Have you had an opportunity to your satisfaction to discuss your choice here today with your attorneys?

"[The Defendant]: Yes, I did. And in regard to that fact, if it's going to delay the trial proceedings, I want to go with what is going to start today.

"The Court: Well, regardless of what—

"[Defense Counsel]: May I have just a moment, Your Honor.

"The Court: Yes.

"(Whereupon, there was a discussion off the record.)

"[Defense Counsel]: Thank you, Your Honor.

"The Court: Okay. Now, if it's a court trial, my understanding is that we will be beginning with the witnesses tomorrow morning.

"[The Defendant]: Thank you. I don't really know how to address the issue of—

"[Defense Counsel]: I think it has been resolved, Your Honor. I have just explained to [the defendant] that whether we do a jury trial or bench trial, no evidence will really be taken until the morning anyway, so [the defendant] has expressed to me his continued desire to go with a bench trial.

"The Court: Is that correct, sir?

"[The Defendant]: Yes, sir.

"The Court: Now, what will happen, therefore—[counsel, are] there any other questions that you would like me to ask [the defendant] as part of this?

"[Defense Counsel]: No, Your Honor."

information. After each of the three charges was read by the court clerk, the defendant pleaded not guilty and elected a court trial.

Trial commenced the following day. After the state rested its case and the court denied the defendant's motion for a judgment of acquittal, the defendant testified as to his version of the events leading to his arrest. Before the defendant's testimony began, defense counsel stated on the record that the defendant would be testifying against the advice of counsel. On November 7, 2003, the defendant rested, and the court found him guilty on all counts.

The defendant was scheduled for sentencing on January 21, 2004. Prior to that date, defense counsel moved for a competency evaluation. On April 22, 2004, the court concluded that the defendant was not competent to continue to sentencing and ordered a sixty day inpatient evaluation and treatment at the Whiting Forensic Division of Connecticut Valley Hospital (Whiting) in order to restore him to competency. The court held another competency hearing on June 23, 2004, at which time the court found that the defendant was not competent to be sentenced and ordered continued hospitalization at Whiting for an additional ninety days. On September 21, 2004, the court held an additional competency hearing and made the determination that the defendant had been restored to competency.

Sentencing was further delayed when the court granted defense counsel's motion for a psychiatric examination pursuant to General Statutes § 17a-566.[5]

---

[5] General Statutes § 17a-566 provides in relevant part: "(a) Except as provided in section 17a-574 any court prior to sentencing a person convicted of an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers . . . may if it appears to the court that such person has psychiatric disabilities and is dangerous to himself or others, upon its own motion or upon request of any of the persons enumerated in subsection (b) of this section and a subsequent finding that such request is justified, order the commissioner to conduct an examination of the convicted defendant by qualified personnel of the division. Upon completion of such

The examiner recommended that the defendant be sentenced in accordance with his conviction. The defendant was sentenced on April 8, 2005, and this appeal followed.

The defendant claims that his waiver of his right to a trial by jury was unconstitutional because the court failed to conduct a more thorough inquiry at the time he was canvassed. He argues that the court's canvass was perfunctory and insufficient to permit his waiver of his fundamental federal and state constitutional rights to a jury trial because he was not competent. The defendant claims that under those circumstances, the court did not ensure that his waiver was voluntary, knowing and intelligent.[6]

examination the examiner shall report in writing to the court. Such report shall indicate whether the convicted defendant should be committed to the diagnostic unit of the division for additional examination or should be sentenced in accordance with the conviction. . . .

"(b) The request for such examination may be made by the state's attorney or assistant state's attorney who prosecuted the defendant for an offense specified in this section, or by the defendant or his attorney in his behalf. If the court orders such examination, a copy of the examination order shall be served upon the defendant to be examined. . . ."

[6] The defendant claims that this issue was preserved for review because he raised it in his oral motion for a new trial. "A party cannot preserve grounds for reversing a trial court decision by raising them for the first time in a postverdict motion." *State* v. *Smith*, 275 Conn. 205, 224 n.10, 881 A.2d 160 (2005).

The defendant claims that this issue is alternately reviewable under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id., 239–40.

We will review the defendant's claim because he has satisfied the first two prongs of *Golding*, as the record is adequate for review and the alleged violation is of constitutional magnitude because it involves his constitutional right to a jury trial. He nevertheless cannot prevail on his claim, for the

Before addressing the merits of the defendant's claims, we set forth the applicable standard of review. "The right to a jury trial in a criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be knowing and intelligent, as well as voluntary. . . . Relying on the standard articulated in *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), we have adopted the definition of a valid waiver of a constitutional right as the intentional relinquishment or abandonment of a known right. . . . This strict standard precludes a court from presuming a waiver of the right to a trial by jury from a silent record. . . . In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case. . . . When such a claim is first raised on appeal, our focus is on compliance with these constitutional requirements rather than on observance of analogous procedural rules prescribed by [General Statutes § 54-82b (b)] or by . . . Practice Book [§ 42-1]." (Internal quotation marks omitted.) *State* v. *Gore*, 96 Conn. App. 758, 766, 901 A.2d 1251, cert. granted on other grounds, 280 Conn. 937, 910 A.2d 218 (2006).

The defendant claims that, because of his lack of competence, his right to a jury trial as guaranteed by the federal constitution was violated by virtue of the court's failure to canvass him adequately regarding his waiver. Further, he contends that his right to a jury trial under the state constitution was violated because the court did not inform him of certain rights to which he was entitled under the provisions of our state constitution. Specifically, the defendant argues that the court was obligated to conduct a more thorough canvass than

reasons set forth more fully hereafter, because he has failed to satisfy the third prong of *Golding*.

otherwise would have been required because the court was aware of previous concerns raised about his competence to stand trial. Those same issues were raised in *State* v. *Ouellette*, 271 Conn. 740, 859 A.2d 907 (2004), and we find that decision to be dispositive of the present appeal.

"It is undisputed that an accused who is competent to stand trial also is competent to waive constitutional rights. . . . Thus, any criminal defendant who has been found competent to stand trial, ipso facto, is competent to waive the right to [a jury trial] as a matter of federal constitutional law. . . . Because the defendant was found competent to stand trial, and because that determination has not been challenged on appeal, the defendant also was competent to waive his right to a jury trial.

"The determination of whether a defendant is competent to waive his right to a jury trial, however, is only the first of two steps necessary to determine whether the relinquishment of that right is constitutionally valid. In addition to determining that a defendant who seeks to [waive a constitutional right] is competent, a trial court must satisfy itself that the waiver . . . is knowing and voluntary. . . . [I]n this sense, there is a heightened standard for [the waiver of a constitutional right], but it is not a heightened standard of competence. . . . Moreover, it is the same standard that is applicable to all criminal defendants who have been found competent to stand trial. Under this standard, [t]he determination of whether there has been an intelligent waiver of [a constitutional right] must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (Citations omitted; internal quotation marks omitted.) Id., 752–54.

In the present case, the same judge who presided over the defendant's trial in November, 2003, had determined

that he was competent to stand trial in a competency hearing held in August, 2003. At that competency hearing, the defendant testified that he was competent and gave reasons for his lack of cooperation with the clinical team. The court asked the defendant questions as to his understanding of the charges, the proceedings and the allegations against him and was satisfied with the defendant's responses. The court determined that the presumption of competence had not been rebutted, and its finding that the defendant was competent to stand trial was never challenged.

Between the time of the competency hearing and the time of trial, neither the defendant nor the state raised any concerns about his competency. No motions were made for further competency examinations. At the time the defendant waived his right to a jury trial, defense counsel stated that the waiver was against the advice of counsel but did not raise the issue of the defendant's competence to make such a waiver.

Only after the court found the defendant guilty of all charges, and immediately prior to sentencing, did defense counsel raise the issue of the defendant's competency in an oral motion for a new trial. The court denied the motion, noting that it had not been asked to make any competency rulings with respect to the defendant after the August 27, 2003 hearing. As reasons for the denial of the motion, the court stated: "[T]here was no issue of competency that the court was asked to pass upon, there were no red flags raised by anybody, nothing was said with respect to [the defendant's] competency, and the trial progressed as if he were competent in accordance with the finding that was made the preceding August.

"It's further my recollection that [the defendant] testified in the case, and he testified in a coherent manner, he testified in a lucid manner; and it's my recollection

that there was nothing, nothing about [the defendant's] testimony that would have, as [defense counsel] put it . . . raised red flags as to his competency. His testimony was presented in an orderly fashion, as I recall, and, therefore, the issue of competency never came up until it was time for sentencing."[7]

In addition to the court's determination that the defendant was competent in August, 2003, the lack of any challenges to his competency after that hearing until the time of sentencing and the court's recollection that his behavior had been ordinary and that he had testified at trial in a coherent manner, the record discloses other indicia of his knowing, intelligent and voluntary waiver of his right to a jury trial. The defendant had some familiarity with the court system, having a lengthy criminal history that included robberies. He received a general equivalency diploma during a period of incarceration at the Cheshire correctional institution. The defendant was represented by counsel at all times in connection with the present charges, and he conferred with counsel before and during the course of the court's canvass with respect to his waiver of a jury trial.

The record, therefore, supports the conclusion that the defendant knowingly, voluntarily and intelligently waived his right to a jury trial and elected to be tried by the court.

The defendant also claims, however, that the court's canvass was inadequate for purposes of article first, § 19, of the state constitution because he was not apprised of certain rights provided under that provision that are not afforded under the federal constitution. In

[7] "[T]he trial judge is in a particularly advantageous position to observe a defendant's conduct during a trial and has a unique opportunity to assess a defendant's competency. A trial court's opinion, therefore, of the competency of a defendant is highly significant." (Internal quotation marks omitted.) *State* v. *Garcia*, 81 Conn. App. 294, 303, 838 A.2d 1064 (2004).

*State* v. *Ouellette,* supra, 271 Conn. 755–58, our Supreme Court specifically rejected that argument, relying on its previous decision, *State* v. *Marino,* 190 Conn. 639, 645–46, 462 A.2d 1021 (1983). The defendant claims that our Supreme Court's decision was wrongly decided.

As an intermediate appellate court, we are bound by Supreme Court precedent and are unable to modify it, as the defendant's counsel has conceded.[8] *Hopkins* v. *Commissioner of Correction,* 95 Conn. App. 670, 672, 899 A.2d 632, cert. denied, 279 Conn. 911, 902 A.2d 1071 (2006). "[W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) *Mazzuca* v. *Sullivan,* 94 Conn. App. 97, 102, 891 A.2d 83, cert. denied, 278 Conn. 905, 896 A.2d 107 (2006). Accordingly, we decline to address further that aspect of the defendant's appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] Although the defendant acknowledges that we are bound by our Supreme Court's holdings, he nevertheless briefed the issue because "he cannot forgo the claim here and then attempt to raise it in the Supreme Court."